

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWEST DIVISION

| | |
|---|---|
| **CHERYL JARMON-GOODMAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CASE NO. 3:18-cv-00591-CLS** |
| ) | |
| **CITY OF MUSCLE SHOALS,** ) | |
| **MUSCLE SHOALS POLICE** ) | |
| **DEPARTMENT, CITY OF** ) | |
| **SHEFFIELD, et al.** ) | |
| ) | |
| **Defendants.** ) | |

---

## BRIEF IN SUPPORT OF MOTION TO DISMISS
## OF CITY OF SHEFFIELD, ALABAMA, THE DEFENDANT
## DESIGNATED AS THE "CITY OF SHEFFIELD POLICE
## DEPARTMENT," SAM GARRISON, AND RICKY TERRY

---

**David J. Canupp**
**J. Brad Emmons**
**Lanier Ford Shaver & Payne PC**
**2101W. Clinton Avenue, Ste. 102**
**Huntsville, AL 35805**
**(256) 535-1100**

*Attorneys for Defendants City of Sheffield, Alabama, the Defendant*
*Designated as the "City of Sheffield Police Department,"*
*Sam Garrison and Ricky Terry*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

I.     Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    Matters Alleged in the Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.   Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       A.     Because Plaintiff's Complaint Constitutes an Impermissible
              Shotgun Pleading, the Sheffield Defendants are Entitled to
              Dismissal of Plaintiff's Complaint in Its Entirety  . . . . . . . . . . . . . . 4

       B.     The Felonious Injury Claim in Count II Must Be Dismissed
              Because Ala. Code § 6-5-370 Does Not Create a Cause of Action
              . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

       C.     The Outrage Claim in Count IV Fails to Allege Extreme
              and Outrageous Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       D.     The Sheffield Police Department is Not a Legal Entity
              Subject to Suit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

       E.     The City is Immune from Plaintiff's Claim for Punitive Damages  . 14

       F.     Any State-Law Claim of Negligent Failure to Train and Supervise
              is Inviable as a Matter of Law  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IV.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

i

## I.   <u>Introduction</u>

This brief is submitted in support of the motion to dismiss filed by the City of Sheffield ("City"), the defendant designated as "City of Sheffield Police Department," Officer Sam Garrison, and Captain Ricky Terry (collectively the "Sheffield Defendants").[1]

## II.   <u>Matters Alleged in Complaint</u>

Plaintiff alleges that on or about the evening of April 18, 2016, Sheffield Police Officer Sam Garrison and another Sheffield Police Officer whose last name is Bishop entered her house and arrested her. (Doc. 1, ¶¶ 3-5). Plaintiff claims these officers were accompanied by Muscle Shoals Police Officer Steven Benson. (<u>Id</u>.).

Plaintiff specifically alleges that Officers Garrison, Bishop, and Benson collectively "knocked the door down," collectively informed her that a warrant had been issued for her arrest, and collectively directed her to go with them. (<u>Id</u>. ¶¶ 4, 5). Instead of complying forthwith, Plaintiff repeatedly demanded to see the arrest warrant. (<u>Id</u>.). Plaintiff alleges that in response to her demand to see a warrant, "the Defendant Officers" responded: "are you resisting arrest." (<u>Id</u>. ¶ 5). Plaintiff then alleges that one of the officers, who Plaintiff alleges worked for Muscle Shoals, then

---

[1]At the time of filing, these Defendants understand that Sheffield Police Chief Greg Ray (now retired) and Sheffield Police Officer Bishop have not yet been served in this action.

Tased Plaintiff three times. (Id. ¶¶ 6-7). Later, however, Plaintiff claims that "one or more of the Defendant Officers continued to electrocute Plaintiff," creating confusion as to who she is accusing of operating the Taser. (Id. at ¶ 22). Plaintiff alleges she was then handcuffed by "the Defendant Officers," and taken out of her house, again by "the Defendant Officers." (Id. ¶ 8). She contends that she was kicked in the side and stomach "by one of the Defendant Officers" after she was handcuffed, though she does not state which officer allegedly kicked her and does not describe in further detail the circumstances of this use of force. (See id. ¶ 9). Adding confusion, Plaintiff alleges that the other officers "witnessed, but did not directly participate in," the kicking. (Id. ¶ 10). She claims these other officers "made a conscious decision not to intervene," though she does not explain how she reached this conclusion. (Id.). Plaintiff alleges that after she was arrested, she was charged with one or more counts of negotiating worthless checks. (Id. ¶ 11). Again, she does not say who charged her with this crime.

Plaintiff has sued the Sheffield Defendants under a number of theories. As to Officer Garrison, while not specifying what particular application of force he engaged in, Plaintiff asserts a single federal claim for excessive force pursuant to 42 U.S.C. § 1983 (Count I). Plaintiff also levies against Officer Garrison a purported state-law claim for "felonious injury" (Count II), a state-law assault and battery claim (Count

2

III), and a state-law outrage claim (Count IV). Plaintiff then asserts a separate claim for negligent failure to train and supervise against Captain Terry, the City of Sheffield, and the purported entity designated as the Sheffield Police Department. (Count V). Before each of these counts, Plaintiff states that she "hereby adopts and re-alleges each and every allegation in the above-stated paragraphs of this Complaint, as if set forth verbatim herein." (Doc. 1, *passim*). Within the body of the counts, Plaintiff repeatedly accuses all defendants (or at least all officer defendants, *i.e.*, Garrison, Bishop, and Benson) of engaging in the same conduct, without consistently differentiating between them or outlining what conduct caused them to be sued. (See, e.g., id. at ¶¶ 22, 23, 25, 27, 32, 33, 35, 36, 38, 40, 42). On top of this, in the counts, Plaintiff accuses all "Defendant Officers" generally of conduct that the factual portion of the complaint attributes to just one officer. (Compare id. at 6 and 22).

Although the Sheffield Defendants have defenses to each of these theories of liability, the fact of the matter is Plaintiff's complaint constitutes a shotgun pleading, and must be dismissed without further discussion. Furthermore, regardless of the sufficiency of the pleading, certain of these theories are inviable as a matter of law.

3

### III.    <u>Argument</u>

A.    Because Plaintiff's Complaint Constitutes an Impermissible Shotgun Pleading, the Sheffield Defendants are Entitled to <u>Dismissal of Plaintiff's Complaint in its Entirety</u>

Plaintiff's complaint constitutes an impermissible shotgun pleading. At the beginning of each claim, Plaintiff "adopts and re-alleges each and every fact" or "allegation" in her complaint "as if set forth verbatim herein." (Doc. 1 at ¶¶ 19, 30, 34, 37, 44). Plaintiff also regularly refers to actions taken by multiple law enforcement officers without specifying which officer was responsible for which acts or omissions. (See, e.g., <u>id</u>. ¶¶ 8-10). These features of Plaintiff's complaint earn it the notorious status of a "shotgun pleading" under Eleventh Circuit caselaw. See, e.g., <u>Weiland v. Palm Beach Cnty. Sheriff's Office</u>, 792 F.3d 1313, 1321 (11th Cir. 2015) (defining a "shotgun pleading" as including, among other things, "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint," and one "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions").

"The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate

notice of the claims against them and the grounds upon which each claim rests." Id.

at 1323. In the present action, Plaintiff's incorporation of *all* preceding allegations

into every subsequent claim "lead[s] to a situation where most of the counts (*i.e.*, all

but the first) contain irrelevant factual allegations and legal conclusions." Strategic

Income Fund, LLC v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir.

2002). Thus, for example, "allegations of fact that may be material to a determination

of count one, but not count four, are nonetheless made a part of count four," making

it "virtually impossible to know which allegations of fact are intended to support

which claim(s) for relief." Anderson v. Dist. Bd. of Trs., 77 F.3d 364, 366 (11th Cir.

1996). In these situations, "dismissal . . . under Rules 8(a)(2) and 10(b) is

appropriate." Omanwa v. Catoosa County, 711 F. App'x 959, 963-64 (11th Cir.

2017).

Furthermore, where a complaint refers back to "all allegations of fact in all

preceding paragraphs," and in doing so effectively asserts claims against multiple

defendants without specifying which defendant is responsible for each action, district

courts regularly find that the complaint constitutes a shotgun pleading that is subject

to dismissal. See, e.g., McCall v. Bank of Am., N.A., 2016 WL 5402748, at *2-3

(M.D. Ala. Sept. 26, 2016) ("Rote and repeated incorporations by reference fill each

count 'with factual allegations that could not possibly be material to that specific

5

count' . . . ."); <u>Dubose v. City of Hueytown</u>, 2015 WL 5011383, at *5-6 (N.D. Ala. Aug. 24, 2015; see also Weiland, 792 F.3d at 1323 & n.14 (noting that a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" is a quintessential example of a shotgun pleading) (citing, e.g., Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001), and Ebrahimi v. City of Huntsville, 114 F.3d 162, 164 (11th Cir. 1997)).

Chief Judge Bowdre's observations in <u>Dubose</u> regarding shotgun pleadings are instructive. In that case, as in this one, the Plaintiff brought multiple counts that incorporated all preceding paragraphs of the complaint in conflicting ways. See 2015 WL 5011383, at *5. For example, although a paragraph under the Plaintiff's excessive force claim had identified a specific officer who allegedly used force, earlier paragraphs suggested that another officer or "perhaps all the Defendant Officers" had engaged in the purportedly excessive force, while an even later paragraph vaguely suggested yet another defendant's involvement. See <u>id</u>. Despite the inconsistencies, the Plaintiff had incorporated by reference *all* of these inconsistent paragraphs into all subsequent claims. See <u>id</u>. Under those circumstance, the court concluded that dismissal was appropriate because "the court and, presumably, the Defendants, would have difficulty analyzing the claim to determine

6

which Defendant allegedly did what act(s) that supposedly constitute excessive force." See id. at *6 ("Head-scratching about holes left by the shotgun—which facts support which claim against which Defendant—should not be the job of the court . . . .").

Plaintiff's complaint suffers from the exact same infirmities found in Dubose, but to an even more extreme degree. For example, Plaintiff initially states in her complaint that *only* Officer Benson of the Muscle Shoals Police Department applied a Taser to Plaintiff. (Doc. 1 ¶¶ 6-7). Although Count I incorporates each of these paragraphs, that same claim also includes an allegation that "one *or more* of the Defendant Officers" applied the Taser to Plaintiff. (Id. ¶ 22) (emphasis supplied). Compounding the confusion, Count II incorporates *all of these paragraphs* (id. ¶ 30) while simultaneously implying that *all three* officers on the scene may have applied a single Taser "multiple times." (Id. ¶33). Count III then incorporates all of these contradictory paragraphs (id. ¶ 34) before repeating the suggestion that perhaps *all three* officers used a single Taser on Plaintiff (id. ¶ 36). Count IV adds additional disarray by again incorporating all preceding contradictory paragraphs (id. ¶ 37) and again suggesting that all three officers may have used a Taser on Plaintiff (id. ¶ 41).

The waters are further muddied in Count V. In this claim, Plaintiff first incorporates *all* preceding allegations, including the ones that contradict each either

and the ones that have nothing to do with the liability of a city or a supervisor. (See id. ¶ 44). This is enough to render Count V unintelligible, since Plaintiff's allegations make it impossible for each municipality to know which alleged wrongs resulted from its own alleged training and supervision failures, and which actions resulted from the other municipality's alleged failures. Complicating matters further, Plaintiff then suggests that each the individual supervisory Defendants, and indeed both cities themselves, may somehow be responsible for the actions of *all* of the aforementioned officers, even those not under their employ. (See, e.g., id. ¶¶ 49-51). In short, by incorporating all preceding allegations while asserting new and unclear factual allegations, Count V suggests that Plaintiff may—or may not—be seeking to impose liability on the City of *Sheffield* and its supervisory individuals for the purported failure to supervise or train *Muscle Shoals* officers, and/or vice-versa. As these allegations demonstrate, Plaintiff's unclear shotgun pleading falls does not "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Weiland, 792 F.3d at 1323; see also Dubose, 2015 WL 5011383, at *5-6. For this reason alone, the complaint must be dismissed.

B.   The Felonious Injury Claim in Count II Must Be Dismissed Because Ala. Code § 6-5-370 Does Not Create a Cause of Action

In Count II of her complaint, Plaintiff attempts to assert a claim for "felonious

8

injury." (Doc. 1 ¶¶ 30-33). As authority for this claim, Plaintiff cites Ala. Code § 6-5-370, which provides in full, "For any injury, either to person or property, amounting to a felony, a civil action may be commenced by the party injured without prosecution of the offender." Ala. Code § 6-5-370.

However, as the Alabama Supreme Court has clarified, § 6-5-370 does *not* create a cause of action. Instead,

> Section 6-5-370 abrogates the common-law rule of "suspension," the rule that "a civil action for injury to person or property, amounting to a felony, could not be maintained without prosecution of the offender." Section 6–5–370 does not create a cause of action; rather, it merely allows a Plaintiff to commence a civil action even if the Plaintiff does not pursue criminal prosecution of the defendant.

Lewis v. Fraunfelder, 796 So. 2d 1067, 1070 (Ala. 2000) (internal citations omitted).

Under the rule recognized by the Alabama Supreme Court in Lewis, § 6-5-370 "simply provides that the absence of a prosecution does not bar a civil action for the same injuries." Presley v. Scott, No. 4:13-cv-2067-LSC-TMP, 2014 WL 7146837, at *36 (N.D. Ala. Dec. 15, 2014); see also Cornielius v. Brown, No. 6:06-cv-2271-HGD, 2008 WL 11377745, at *10 n.4 (N.D. Ala. Sept. 26, 2008) (noting that § 6-5-370 is merely "a procedural statute"). Put another way, the statute "only eliminates an obstacle for Plaintiffs with a valid cause of action; ***it does not create a civil cause of action for any injury that amounts to a felony***." Presley, 2014 WL 7146837, at

9

*36 (quoting <u>Preskitt v. Lyons</u>, 865 So. 2d 424, 429 (Ala. 2003)) (emphasis supplied).

For this reason, any claim purportedly brought under the authority of Ala. Code § 6-5-370 fails to state a claim upon which relief may be granted. See, e.g., <u>Presley</u>, 2014 WL 7146837, at *36; <u>Bell Aerospace Servs., Inc. v. U.S. Aero Servs., Inc.</u>, 690 F. Supp. 2d 1267, 1274 (M.D. Ala. 2010); <u>Crooked Creek Props., Inc. v. Ensley</u>, 2:08-CV-1002-WKW[WO], 2009 WL 3644835, at *7 (M.D. Ala. Oct. 28, 2009) ("§ 6-5-370 does not present a vehicle through which [Plaintiffs] can bring claims alleging that [d]efendants violated state criminal statutes."); <u>Bogus v. Ala. Dep't of Corr.</u>, 7:06-CV-1667-RDP, 2008 WL 11379957, at *29 (N.D. Ala. Sept. 22, 2008) (recognizing that § 6-5-370 does not create a civil cause of action and that "<u>Lewis</u> guts Plaintiff's argument" to the contrary). Since Count II is wholly (and incorrectly) premised on the notion that § 6-5-370 creates a civil cause of action, that claim must be dismissed in its entirety.

   C.   The Outrage Claim in Count IV Fails to Allege Extreme and
        <u>Outrageous Conduct</u>

Count IV asserts a state-law claim of outrage against Officer Garrison in his individual capacity for the use of allegedly excessive force on Plaintiff. The allegations of the complaint do not, however, state a maintainable claim under Alabama law. Under Alabama law, "outrage is a very limited cause of action that is

available only in the most egregious circumstances." See <u>Thomas v. B.S.E. Indus.</u> <u>Contractors, Inc.</u>, 624 So. 2d 1041, 1044 (Ala. 1993); see also <u>Barton v. Am. Red</u> <u>Cross</u>, 829 F. Supp. 1290, 1309 (M.D. Ala. 1993) ("The elements of the tort [of outrage] are met only in rare circumstances."). To establish this claim, the Plaintiff must show that the defendant's alleged conduct is both "extreme and outrageous." <u>Callens v. Jefferson Cnty. Nursing Home</u>, 769 So.2d 273, 281 (Ala. 2000). "By extreme [the courts] refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." <u>Am. Road Svc. Co. v. Inmon</u>, 394 So. 2d 361, 365 (Ala. 1980). This standard has been "applied strictly" by the Alabama Supreme Court. <u>Saville v. Houston Cnty. Healthcare Auth.</u>, 852 F. Supp. 1512, 1541 (M.D. Ala. 1994) (quoting <u>Cont'l Cas. Ins. Co. v. McDonald</u>, 567 So. 2d 1208, 1211 (Ala. 1990)).

The Alabama Supreme Court has noted that "all cases in which this Court has found a jury question on an outrage claim have fallen within only three categories: (1) cases having to do with wrongful conduct in the context of family burials . . . (2) a case where insurance agents employed heavy-handed, barbaric means in attempting to coerce the insured into settling an insurance claim . . . and (3) a case involving egregious sexual harassment." <u>Thomas</u>, 624 So.2d at 1044; see also <u>Stabler v. City</u>

11

of Mobile, 844 So.2d 555, 560 (Ala. 2002) (same); Hurst v. Cook, 981 So.2d 1143, 1157 (Ala. Civ. App. 2007) (same).[2]

Given its restrictive nature, the Alabama appellate courts have rejected attempts to expand this tort to include conduct similar to that alleged in this case. See, e.g., Newton v. Town of Columbia, 695 So.2d 1213, 1218 (Ala. Civ. App. 1997) (noting that assault does not necessarily constitute "extreme and outrageous conduct sufficient to support" an outrage claim). Furthermore, federal courts interpreting Alabama law have consistently rejected attempts to utilize the outrage cause of action to apply to police encounters similar to (and in many instances, worse than) the encounter alleged here. See Fuqua v. Hess, No. 3:16-CV-1510-HGD, 2017 WL 192760, at *7-8 (N.D. Ala. Jan. 18, 2017) (allegation that officer unlawfully arrested and Tased suspect "does not meet the high standard" for an outrage claim); Manning v. Mason, No. 1:10-cv-925-MEF, 2011 WL 1832539, at *4 (M.D. Ala. May 13, 2011) (dismissing outrage claim premised on use of Taser on suspect during arrest);

---

[2] Although the Alabama Supreme Court has recently observed that a claim of the tort of outrage may be viable in some other extreme circumstances than the three noted above, the Court in doing so emphasized the highly restrictive and limited nature of the cause of action. In O'Rear v. B.H., 69 So. 3d 106, 118 (Ala. 2011), the Alabama Supreme Court affirmed the judgment of an outrage claim asserted against a family physician who, when asked by a teenage boy's mother to counsel the boy concerning his stress over his parents' divorce, instead began exchanging addictive prescription drugs for homosexual sex over a number of years, resulting in the boy's drug addiction. However, in doing so, the Court again noted that the tort of outrage remained "an extremely limited cause of action." Id.

Hamilton v. City of Jackson, 508 F. Supp. 2d 1045, 1051 (S.D. Ala. 2007) (allegations that officer grabbed elderly man's throat with both hands and pressed him up against a door for 30-40 seconds, "almost causing [the man] to blackout and lose consciousness," insufficient to support an outrage claim); McCray v. City of Dothan, 169 F.Supp. 2d 1260, 1300 (M.D. Ala. 2001) (allegation that police attacked Plaintiff in the presence of his children, choked him, falsely arrested him, left the distraught children in the care of strangers, and maliciously prosecuted the Plaintiff were insufficient for a claim of outrage).

As these cases make clear, Plaintiff's slim allegations fall far below the threshold required for "extreme and outrageous" conduct. As a result, Count IV is due to be dismissed.

D.    The Sheffield Police Department is Not a Legal Entity Subject to Suit

Plaintiff has sued the Sheffield Police Department in this case as if it were a separate entity from the City, which is also a co-defendant in this suit. However, under Alabama law, a police department is a subordinate agency or department of a municipality—it is not a distinct entity capable of being sued:

> Generally, the departments and subordinate entities of municipalities, counties, and towns that are not separate legal entities or bodies do not have the capacity to sue or be sued in the absence of specific statutory authority . . . **_Among subordinate entities generally lacking the_**

13

> *capacity to sue or be sued separately are police departments* . . . .

Ex parte Dixon, 55 So. 3d 1171, 1179 n.1 (Ala. 2010) (quoting 56 Am. Jur. 2d Municipal Corporations 787 (2000)) (emphasis supplied). Federal courts applying Alabama law also have held that police departments are not a proper party to a lawsuit. See, e.g., Howard v. City of Demopolis, 984 F. Supp. 2d 1245, 1253 (S.D. Ala. 2013) (holding that the municipality, not its police department, was the proper party to the lawsuit); Hawkins v. City of Greenville, 101 F. Supp. 2d 1356, 1363 (M.D. Ala. 2000) (same); see also Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) ("Sheriff's departments and police departments are not usually considered legal entities subject to suit."). Accordingly, the Sheffield Police Department is due to be dismissed from this suit.

### E.   The City is Immune from Plaintiff's Claim for Punitive Damages

Plaintiff limits her request for punitive damages in Count V to claims "against individuals." (Doc. 1, *ad damnum* clause following ¶ 51). Yet, Plaintiff's prayer for relief appears to request punitive damages from *all* defendants for the violations alleged in her complaint. (Doc. 1 at 13) (demanding "an Order requiring the Defendants to pay Plaintiff compensatory and punitive damages"). In all likelihood, this inconsistency is simply another illustration of the shotgun nature of Plaintiff's complaint. See *supra*. However, to the extent that Plaintiff seeks punitive damages

14

against the City with respect to her federal § 1983 claims, those requests must be dismissed. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) (reviewing the history and policy behind the enactment of § 1983 and concluding that "a municipality is immune from punitive damages under 42 U.S.C. § 1983"). Similarly, Plaintiff cannot obtain punitive damages against the City on any state-law claim. See Ala. Code §§ 6-11-26, 11-47-190.

F.      Any State-Law Claim of Negligent Failure to Train and Supervise
        is Inviable as a Matter of Law

Plaintiff's complaint includes at Count V a claim of negligent failure to train and supervise that is asserted against a number of defendants, including the City and Captain Terry. It appears this claim may be asserted under state-law. However, any such claim alleging negligent training or supervision fails for the simple reason that no such claim exists under Alabama law. Federal courts throughout the state have long recognized that "Alabama law does not recognize a cause of action against a municipality or supervisor for negligent training or supervision." Doe v. City of Demopolis, 799 F. Supp. 2d 1300, 1311-12 (S.D. Ala. 2011); see also Hand v. Univ. of Ala. Bd. of Trs., ___ F. Supp. 3d ___, 2018 WL 372310, at *6 (N.D. Ala. 2018) (Proctor, J.) ("Alabama law does not recognize a cause of action against a supervisor for that supervisor's negligent training or supervision of a subordinate."); Brown v.

15

City of B'ham, No. 2:15-cv-1273-SGC, 2017 WL 4264997, at *10 (N.D. Ala. Sept. 26, 2017) (Cornelius, Mag. J.) (dismissing "negligent supervision, hiring, and maintenance" claim against municipality because "Alabama law does not recognize any of these claims against a municipality"); Barr v. Jefferson Cnty. Barber Comm'n, 250 F. Supp. 3d 1245, 1258 (N.D. Ala. 2017) (Hopkins, J.) (dismissing claim against municipal official in her individual and official capacities, given the absence of authority that Alabama recognizes such a claim against municipalities or supervisors); K.D. ex rel. J.D. v. Wooten, No. 2:12-cv-2734-SGC, 2015 WL 1138492, at *1 n.1, *13 (N.D. Ala. Mar. 13, 2015) (Bowdre, C.J.) (adopting Report and Recommendation and agreeing "that Alabama does not recognize a cause of action against a supervisor for negligent supervision of a subordinate"); Norman v. Norman, No. CV 12-J-2136-S, 2013 WL 1767800, at *3 (N.D. Ala. Apr. 22, 2013) (I.P. Johnson, J.); Crutcher v. Vickers, No. CV-10-S-01176-NE, 2012 WL 3860557, at *13 (N.D. Ala. Sept. 5, 2012) (C.L. Smith, J.) (finding that "no such cause of action exists" against supervisory individuals under Alabama law); Borton v. City of Dothan, 734 F. Supp. 2d 1237, 1258 (M.D. Ala. 2010); Hamilton v. City of Jackson, 508 F. Supp. 2d 1045, 1058 (S.D. Ala. 2007) (dismissing negligent training or supervision claim against police chief "because no such cause of action exists under Alabama law"); Ott v. City of Mobile, 169 F. Supp. 2d 1301, 1314-15 (S.D. Ala. 2001) (recognizing "no

16

authority for the proposition" that a cause of action for negligent training or supervision exists under state law). The weight of authority is clear: to the extent Count V purports to assert a state-law claim of negligent training or supervision, that claim is not cognizable.

## IV.    Conclusion

For the foregoing reasons, the complaint is a shotgun pleading and must be dismissed. In addition, certain of the claims asserted in the shotgun complaint are due to be dismissed as a matter of law, even assuming the complaint was properly plead.

s/ David J. Canupp
David J. Canupp

s/ J. Bradley Emmons
J. Bradley Emmons

LANIER FORD SHAVER & PAYNE, P.C.
P. O. Box 2087
2101 West Clinton Avenue,  Suite 102 (35805)
Huntsville, AL 35804
Phone: 256-535-1100 / Fax: 256-533-9322
E-mail:  djc@LanierFord.com & jbe@LanierFord.com

Attorney for Defendants City of Sheffield, Alabama,
the defendant designated as the "City of Sheffield Police
Department," Sam Garrison and Ricky Terry

CERTIFICATE OF SERVICE

I certify that I have filed the foregoing with the Clerk of the Court using the ECF System, which will send notification of such filing to those parties of record who are registered for electronic filing, and further certify that those parties of record who are not registered for electronic filing have been served by mail by depositing a copy of the same in the United States mail, first class postage prepaid and properly addressed to them as follows:

> Megan Garcia
> The Revill Law Firm
> 2027 2nd Avenue North
> Bradford Building, Suite A
> Birmingham, AL 35203
> Phone: 205-521-9929
> Fax: 205-994-6151
> Email: mgarcia@revilllaw.com

on this the 14 day of May, 2018.

> s/ David J. Canupp
> David J. Canupp

18