# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **CHERYL JARMON-GOODMAN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-18-S-591-NW |
| | ) | |
| **CITY OF MUSCLE SHOALS,** | ) | |
| **ALABAMA,** *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This case arises from an incident that allegedly occurred during the night of Monday, April 18, 2016, when plaintiff, Cheryl Jarmon-Goodman, contends that she was injured in her home as a result of being "Tasered"[1] by one of the defendant police officers. Plaintiff's complaint alleges federal constitutional and state-law tort claims against eleven defendants: *i.e.*, the cities of Muscle Shoals and Sheffield, Alabama; the "Police Departments" of each of those municipalities; the Chiefs of each police department (*i.e.*, Clint Reck in Muscle Shoals, and Greg Ray in Sheffield); the Shift Commanders of each police department (*i.e.*, Cedric Morris in Muscle Shoals, and Ricky Terry in Sheffield); Muscle Shoals police officer Steven Benson; Sheffield

---

[1] "Tasered" is the past tense of using the noun "Taser" as if it were a verb. As thus used, the term refers to the act of discharging a "Taser" (the brand name of an electroshock weapon that fires two small dart-like electrodes) into someone in order to temporarily incapacitate that person.

police officer Sam Garrison; and a second Sheffield police officer identified only as "Officer Bishop (first name unknown)."[2]

Plaintiff alleged that Muscle Shoals police officer Steve Benson and Sheffield police officers Sam Garrison and "Officer Bishop" used excessive force in violation of the Fourteenth Amendment of the Constitution and, thereby, caused her to suffer a "felonious injury" as defined in Alabama Code § 6-5-370, as well as committing the state-law torts of assault, battery, and outrage.

She also contends that the remaining eight defendants — *i.e.*, the cities of Muscle Shoals and Sheffield, Alabama; the police departments of each municipality; the Chiefs of the respective police departments; and the Shift Commanders of each department — are liable under Alabama law for negligently failing to train and supervise Muscle Shoals police officer Steve Benson and Sheffield police officers Sam Garrison and "Officer Bishop."

The following memorandum opinion discusses only one of four pending motions: *i.e.*, the motion to dismiss filed by the City of Sheffield, Alabama, the Sheffield Police Department, Sheffield Shift Commander Ricky Terry, and Sheffield

---

[2] *See* doc. no. 1 (Complaint), ¶¶ II.2.a.-f., at ECF 1-3. **Note**: "ECF" is an acronym formed from the initial letters of the name of a filing system that allows parties to file and serve documents electronically: *i.e.*, "Electronic Case Filing." *See The Bluebook: A Uniform System of Citation*, Rule 7.1.4, at 21 (Columbia Law Review Ass'n *et al.* eds., 19th ed. 2010). When this court cites to pagination generated by the header electronically imprinted on a scanned copy of a document filed in this case, it will, as here, precede the page number(s) with the letters "ECF."

2

police officer Sam Garrison.[3]

## I. PROCEDURAL BACKGROUND

This court entered an order on August 21, 2018, directing plaintiff to show cause why four defendants (*i.e.*, the City of Sheffield Police Department, Sheffield Police Chief Greg Ray, Muscle Shoals Police Department Shift Commander Cedric Morris, and the Sheffield police officer identified only as "Officer Bishop") should not be dismissed as a result of plaintiff's failure to comply with Federal Rule of Civil Procedure 4(m), which requires a complaint to be served within ninety days.[4] Plaintiff conceded that her claims should be dismissed as to Chief Ray, Shift Commander Morris, and the City of Sheffield Police Department, but asked for additional time to attempt to better identify and serve "Officer Bishop."[5] In response, this court dismissed all claims against Ray, Morris, and the Sheffield Police Department on August 30, 2018, but granted plaintiff fourteen additional days to perfect and prove service of the complaint on "Officer Bishop."[6] Plaintiff

---

[3] *See* doc. no. 19. Greg Ray, Chief of the Sheffield Police Department, is not among the defendants who joined in this motion. The other pending motions are identified as doc. no. 10 (Motion for Summary Judgment by Muscle Shoals Police Chief Clint Reck), doc. no. 15 (Motion to Dismiss of the City of Muscle Shoals), and doc. no. 16 (Motion to Dismiss of Muscle Shoals police officer Steve Benson). For the reasons discussed *infra*, each of the remaining motions are due to be denied without prejudice.

[4] *See* doc. no. 39.

[5] *See* doc. no. 42.

[6] *See* doc. no. 44. Defendant Cedric Morris filed a motion for summary judgment prior to the deadline for service, and the court denied that motion as moot. *Id.*

3

nevertheless failed to serve that defendant within the extended period. Accordingly, this court dismissed all claims against him on September 19, 2018.[7]

**II. DISCUSSION**

The motion to dismiss jointly filed by the City of Sheffield, Alabama, its "Police Department," Shift Commander Ricky Terry, and police officer Sam Garrison contends that plaintiff's complaint is due to be dismissed because it constitutes an impermissible "shotgun" pleading. Those defendants argue that the imprecision of the complaint's counts, as well as the re-incorporation of all preceding allegations into each subsequent count, leave them unable to ascertain which of the defendants plaintiff seeks to hold liable for the conduct described.

So-called "shotgun" pleadings violate either Federal Rule of Civil Procedure 8(a)(2) — which requires "a short and plain statement of the claim showing that the pleader is entitled to relief" by "fail[ing] to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," *Weiland v. Palm Beach Sheriff's Department*, 792 F.3d 1313, 1323 (11th Cir. 2015) (alterations supplied) — or the requirement of Rule 10(b) that discrete claims should be pled in separate counts. *See Anderson v. District Broad of Trustees*, 77 F.3d 364, 366-67 (11th Cir. 1996). The toleration of such complaints is

---

[7] *See* doc. no. 47.

4

said to work a "great disservice to the administration of civil justice." *Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1332 (11th Cir. 1998).

The Eleventh Circuit has repeatedly condemned such pleadings. *See*, *e.g.*, *Davis v. Coca-Cola Bottling Co. Consolidated*, 516 F.3d 955, 979-80 & n.54 (11th Cir. 2008) (collecting numerous cases), *abrogated on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *BMC Industries, Inc. v. Barth Industries, Inc.*, 160 F.3d 1322, 1326-27 n.6 (11th Cir. 1998); *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1368 (11th Cir. 1998); *Pelletier v. Zweifel*, 921 F.2d 1465, 1518-19 (11th Cir. 1991).

It is said that such pleadings waste scarce judicial resources, "inexorably broaden[ ] the scope of discovery," "wreak havoc on appellate court dockets," and "undermine[ ] the public's respect for the courts." *Davis*, 516 F.3d at 981-83 (detailing the "unacceptable consequences of shotgun pleading") (alterations in original). *See also Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294-95 (11th Cir. 2018).

The Eleventh Circuit's opinion in *Weiland*, *supra*, identified four categories of "shotgun" pleadings.

> Though the groupings cannot be too finely drawn, we have

> identified four rough types or categories of shotgun pleadings. **[*i*]** The most common type — by a long shot — is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. **[*ii*]** The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. **[*iii*]** The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. **[*iv*]** Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland*, 792 F.3d at 1321-23 (bracketed alterations supplied, footnotes omitted).

The Eleventh Circuit directs district courts to independently police the parties' pleadings, and,

> [w]hen a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court **must** *sua sponte* give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds. In the repleading order, the district court should explain how the offending pleading violates the shotgun pleading rule so that the party may properly avoid future shotgun pleadings.

*Vibe Micro*, 878 F.3d at 1296 (alteration and emphasis supplied, footnote omitted); *see also Jackson v. Bank of America, N.A.*, No. 16-16685, 898 F.3d 1348, 2018 WL 3673002, at *7 (11th Cir. Aug. 3, 2018) (reiterating that, when a complaint is due to

be stricken on the ground that it violates the prohibition on "shotgun" pleadings, the plaintiff should be given "another opportunity to file a complaint that passes muster," but only *after* the district court "point[s] out the defects in the complaint") (alteration supplied) (citing *Vibe Micro*, 878 F.3d at 1295).

As defendants observe, plaintiff has pled multiple counts, each of which incorporates all of the preceding factual allegations:[8] a practice that has been repeatedly condemned by the Eleventh Circuit, and sometimes described as a "mortal sin." *Weiland*, 792 F.3d at 1322 & n.12.[9]

More troublesome, plaintiff has failed to specify which allegations apply to each of the defendants she has sued. For example, in the "Factual Allegations" section of her complaint, plaintiff generically identifies Muscle Shoals police officer

---

[8] *See* doc. no. 1 (Complaint) ¶¶ 19, 30, 34 & 37.

[9] Footnote 12 cites the following opinions: *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n.9 (11th Cir. 1997) (finding a shotgun pleading where "a reader of the complaint must speculate as to which factual allegations pertain to which count"); *Cramer v. Florida*, 117 F.3d 1258, 1261 (11th Cir. 2015) (describing the complaint at issue as "a rambling 'shotgun' pleading that is so disorganized and ambiguous that it is almost impossible to discern precisely what it is that these appellants are claiming"); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 164 (11th Cir. 1997) (describing a complaint that "offered vague and conclusory factual allegations in an effort to support a multiplicity of discrimination claims leveled against 15 defendants" as a "prototypical 'shotgun complaint'"); *Anderson v. District Bd. of Trustees of Central Fla. Comm. College*, 77 F.3d 364, 366 (11th Cir. 1996) (complaint was "perfect example of 'shotgun' pleading in that it [was] virtually impossible to know which allegations of fact [were] intended to support which claim(s) for relief") (citation omitted, alterations supplied); *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla.*, 63 F.3d 1030, 1046 n.51 (11th Cir. 1995) (characterizing the complaint at issue as "a quintessential shotgun pleading, replete with vague and cursory allegations"); and *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir.1991) ("[Plaintiff's complaints] are quintessential 'shotgun' pleadings, replete with factual allegations that could not possibly be material to any of the causes of actions they assert.") (alteration supplied).

Steve Benson and Sheffield police officers Sam Garrison and "Officer Bishop (first name unknown)" as the "Defendant Officers"; and she then alleges that:

> 4. Defendants Garrison, Bishop, and Benson ("*Defendant Officers*") entered Plaintiff's home by knocking the door down. The *Defendant Officers* failed to knock and announce their presence before they kicked the door in. **One or more** of the Defendant Officers knocked Plaintiff's husband to the ground in an attempt to get to Plaintiff in her bedroom.
>
> 5. The *Defendant Officers* asked Plaintiff to get up and go with them. Plaintiff asked why they were in her home and was told there was a warrant. None of the *Defendant Officers* showed Plaintiff a warrant and eventually admitted they had no warrant but claimed Limestone County did. Plaintiff continued to ask to see a warrant to which **one of the Defendant Officers** responded: "are you resisting arrest?"
>
> 6. Plaintiff told the *Defendant Officers* she was not resisting arrest and she merely wanted to see the warrant. Upon information and belief, Defendant Benson then told Plaintiff that she was resisting arrest and proceeded to illegally deploy his TASER on Plaintiff.
>
> . . . .
>
> 9. While she was still handcuffed, Plaintiff was kicked in the side and the stomach by **one of** *the Defendant Officers*. Plaintiff's husband witnessed the beating and pleaded with *the officers* to stop.
>
> 10. The *Defendant Officers* who witnessed, but did not directly participate in, the use of excessive force failed to intervene when *the other Defendant(s)* were using excessive force. *These Defendants* made a conscious choice not to intervene or take any reasonable steps to protect the Plaintiff from the unlawful use of excessive force.

Doc. no. 1 (Complaint), at ECF 4 (emphasis and ellipsis supplied).

Moving to the substantive claims against the defendants, Count One of the Complaint, alleging "Excessive Force in Violation of the Fourteenth Amendment," contains the following vague and ambiguous statements:

> 22. The use of the TASER upon Plaintiff was excessive based on prior state and federal precedent. The initial use of the TASER alone constituted excessive force. However, *one or more of the Defendant Officers* continued to electrocute Plaintiff. *Defendant Officers* had every intention to use excessive force in this situation. . . .
>
> 23. The *Defendant Officers* subjected the Plaintiff to excessive force in violation of the Fourteenth Amendment of the United States Constitution by physically assaulting her with more force than was necessary to arrest her, using excessive force in this situation. The entire time, Plaintiff was obeying the *officers*' orders and trying to understand what was going on, but she never resisted.
>
> . . . .
>
> 25. *The Defendant Officers* could not have plausibly believed the amount of force they applied, including multiple TASING, kicking her in the side and stomach while she was handcuffed, and dragging her out of her home, was necessary under the circumstances. . . .
>
> 26. *The Defendant Officers* continued to use excessive force against the Plaintiff after she had been restrained . . . .
>
> 27. *The other Defendant Officers* who were present at the scene while Plaintiff was being assaulted had a duty to intervene when *the other officers* were using excessive force. *These Defendants* made a conscious choice not to intervene or take any reasonable steps to protect the Plaintiff from *the other officers*' use of excessive force and, as such, they are liable for their nonfeasance.
>
> 28. *The Defendants*' use of excessive force against the Plaintiff

proximately caused her injuries.

Doc. no. 1 (Complaint), at ECF 7-8 (emphasis and ellipses supplied). Those allegations, sometimes using the term "Defendant Officers," and at other times referring to "one of the Defendant Officers," "the other Defendants," "these defendants," or simply "officers," are imprecise and do not provide each of the defendant officers with adequate notice of plaintiff's claims as required by Federal Rule of Civil Procedure 8 and Eleventh Circuit precedent.

The same concerns apply to Count Two, described as a "Civil Action for Felonious Injury Under Ala. Code § 6-5-370." All of the previously alleged facts are incorporated by reference. That count also refers to "Defendants Garrison, Bishop, and Benson," "[t]he Defendant Officers," and "the Defendant" without specifying which of the three individuals allegedly is responsible for plaintiff's injury.[10]

Count Three, described as a "Civil Action for Assault and Battery," adopts all of the allegations of the preceding counts, and asserts claims against "Defendants Garrison, Bishop, and Benson."[11] Paragraph 36 states that "[t]he Defendant Officers assaulted Plaintiff by TASING her multiple times and kicking her in the side and stomach while she was handcuffed."[12] Following that statement, plaintiff demands

---

[10] Doc. no. 1 (Complaint), at ECF 8-9 (alteration supplied).

[11] *Id.* at ECF 9.

[12] *Id.* (alteration supplied).

judgment against "*the Defendant*" (singular).¹³ The court cannot ascertain what act is attributable to each defendant, or which of the "Defendant Officers" she seeks to hold liable for damages.

Count Four, based upon the so-called tort of outrage, adopts all of the previous allegations and, additionally, suffers from the same lack of specificity noted above. Notably, paragraph 39 states that "[t]he *Defendant Officers* who were present at the scene while Plaintiff was being assaulted had a duty to intervene *when the other officers were using excessive force*."¹⁴ There simply is no way any of the defendants, or the court for that matter, can discern the basis of plaintiff's claim. Plaintiff introduced another ambiguity by referring to "*the other officers*" in the same paragraph in which she refers to "*the Defendant Officers*.¹⁵ This count also demands judgment against an unspecified "*Defendant*" (singular).¹⁶

Count Five of the Complaint, which asserts a claim for "negligent failure to train and supervise," likewise suffers from vague and ambiguous allegations:

> 45. This claim is brought against the Sheffield Police Department, the City of Sheffield, the Muscle Shoals Police Department, the City of Muscle Shoals, and individual Defendants Terry, Ray, Morris, and Reck, for violating the Plaintiff's constitutional right to be

---

¹³ *Id.* (emphasis supplied).

¹⁴ *Id*. at ECF 10 (alteration and emphasis supplied).

¹⁵ *Id.* (emphasis supplied).

¹⁶ Doc. no. 1 (Complaint), at ECF 10 (emphasis supplied).

11

[free] from assault and the excessive use of force by police officers.

. . . .

48. *These Defendants were all responsible* for ensuring that the police officers under their command did not use excessive force against Plaintiff by, including but not limited to, creating and implementing policies and procedures regarding the proper use of force, ensuring adequate and sufficient training regarding use of force and providing proper supervision and discipline of police officers. However, *these Defendants* failed to ensure that the police officers did not use excessive force against Plaintiff, which resulted in the use of excessive force against the Plaintiff the [*sic*] violation of her constitutional rights.

Doc. no. 1 (Complaint), at ECF 11 (alteration, emphasis, and ellipses supplied).

## III. CONCLUSION

For all of the foregoing reasons, this court concludes that plaintiff's complaint is an impermissible "shotgun" pleading, and that the motion to dismiss filed by the City of Sheffield, Alabama, the Sheffield Police Department, Sheffield Shift Commander Ricky Terry, and Sheffield police officer Sam Garrison (doc. no. 19) is due to be granted. In light of Eleventh Circuit precedent, however, plaintiff will be afforded one opportunity to cure the defects discussed in this opinion by way of filing an amended complaint. *See*, *e.g.*, *Vibe Micro*, 878 F.3d at 1296.

The other pending motions — *i.e.*, doc. no. 10 (Motion for Summary Judgment by Muscle Shoals Police Chief Clint Reck), doc. no. 15 (Motion to Dismiss of the City of Muscle Shoals), and doc. no. 16 (Motion to Dismiss of Muscle Shoals police

officer Steve Benson) — are due to be denied without prejudice and, thus, may be renewed, if appropriate, following the filing of an amended complaint. Plaintiff would be well-advised, however, to consider the arguments made in those motions when redrafting her complaint.

A separate order, in accordance with the discussion contained in this memorandum of opinion, will be entered contemporaneously herewith.

**DONE** this 9th day of October, 2018.

/s/ Lynwood Smith
United States District Judge