# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **CHERYL JARMON-GOODMAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Civil Action No. CV-18-S-591-NW |
| ) | |
| **CITY OF MUSCLE SHOALS,** ) | |
| **ALABAMA,** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

This case arises from an incident that allegedly occurred during the night hours of Monday, April 18, 2016, when plaintiff, Cheryl Jarmon-Goodman, contends that she was injured in her home as a result of being "Tasered"[1] by one of the defendant police officers. Plaintiff's original complaint alleged federal constitutional and state-law tort claims against eleven defendants: *i.e.*, the cities of Muscle Shoals and Sheffield, Alabama; the "Police Departments" of each of those municipalities; the Chiefs of each police department (*i.e.*, Clint Reck in Muscle Shoals, and Greg Ray in Sheffield); the Shift Commanders of each police department (*i.e.*, Captain Cedric Morris in Muscle Shoals, and Ricky Terry in Sheffield); Muscle Shoals police officer

---

[1] "Tasered" is the past tense of using the noun "Taser" as if it were a verb. As thus used, the term refers to the act of discharging a "Taser" (the brand name of an electroshock weapon that fires two small dart-like electrodes) into someone in order to temporarily incapacitate that person.

Steven Benson; Sheffield police officer Sam Garrison; and a second Sheffield police officer identified only as "Officer Bishop (first name unknown)."[2]

Plaintiff alleged in her original complaint that Muscle Shoals police officer Steve Benson and Sheffield police officers Sam Garrison and "Officer Bishop" used excessive force in violation of the Fourteenth Amendment of the Constitution and, thereby, caused her to suffer a "felonious injury" as defined in Alabama Code § 6-5-370, as well as committing the state-law torts of assault, battery, and outrage.[3] Plaintiff also asserted a state law claim for negligent failure to train and supervise against the cities of Muscle Shoals and Sheffield, Alabama, and their respective police departments, as well as against supervisory personnel Muscle Shoals Police Chief Clint Reck and Sheffield Police Chief Greg Ray, and Shift Commanders Captain Cedric Morris in Muscle Shoals, and Captain Ricky Terry in Sheffield.

Motions for summary judgment were filed by Muscle Shoals Police Chief Clint Reck and Shift Commander Captain Cedric Morris.[4] Chief Reck contended that summary judgment was due because, on April 18, 2016, he was employed as a

---

[2] *See* doc. no. 1 (Complaint), ¶¶ II.2.a.-f., at ECF 1-3. **Note**: "ECF" is an acronym formed from the initial letters of the name of a filing system that allows parties to file and serve documents electronically: *i.e.*, "Electronic Case Filing." *See The Bluebook: A Uniform System of Citation*, Rule 7.1.4, at 21 (Columbia Law Review Ass'n *et al.* eds., 19th ed. 2010). When this court cites to pagination generated by the header electronically imprinted on a scanned copy of a document filed in this case, it will, as here, precede the page number(s) with the letters "ECF."

[3] *See* doc. no. 1 (Complaint) at ECF 7-12.

[4] *See* doc. nos. 10 &11.

captain for the Muscle Shoals Police Department, and was the shift supervisor for only the day shift.[5] Chief Reck averred that Officer Benson was assigned to the night shift, and as such, Chief Reck did not supervise him on the date the incident occurred.[6] Likewise, Captain Morris[7] contended that he was employed as a lieutenant for the Muscle Shoals Police Department on April 18, 2016, was assigned to supervise only the day shift, and that Benson was assigned to the night shift.[8]

Motions to dismiss the complaint were filed by the City of Muscle Shoals and its police officer Steve Benson, the City of Sheffield Police Department, Sheffield's police officer Sam Garrison, and Sheffield Shift Commander Ricky Terry.[9]

## I. PROCEDURAL HISTORY

This court entered an order on August 21, 2018, directing plaintiff to show cause why four of the original defendants (*i.e.*, the City of Sheffield Police Department, Sheffield Police Chief Greg Ray, Muscle Shoals Police Department Shift Commander Captain Cedric Morris, and the Sheffield police officer identified only

---

[5] Doc. no. 12-1 (Exhibit A to "Joint Evidentiary Submission in Support of Motions for Summary Judgment by Defendants Chief Clint Reck and Captain Cedric Morris"), at ¶ 4.

[6] *Id.* at ¶¶ 5-6.

[7] Captain Morris moved for summary judgment even though he had not been served. *See* doc. no. 11 ("Motion for Summary Judgment by Defendant Captain Cedric Morris"), at ECF 1 n.1.

[8] Doc. no. 12-1 (Exhibit B to "Joint Evidentiary Submission in Support of Motions for Summary Judgment by Defendants Chief Clint Reck and Captain Cedric Morris"), at ¶¶ 4-6.

[9] *See* doc. nos. 15, 16 & 19.

3

as "Officer Bishop") should not be dismissed as a result of plaintiff's failure to comply with Federal Rule of Civil Procedure 4(m), which requires a complaint to be served within ninety days.[10] Plaintiff conceded that her claims should be dismissed as to the City of Sheffield Police Department, Sheffield Police Chief Greg Ray, and Muscle Shoals Police Shift Commander Cedric Morris, but asked for additional time to attempt to better identify and serve "Officer Bishop."[11] Accordingly, this court dismissed all claims against the Sheffield Police Department, Ray, and Morris on August 30, 2018, and granted plaintiff fourteen additional days to perfect and prove service of the complaint on the Sheffield police officer identified only as "Officer Bishop."[12]

Even so, plaintiff failed to serve that defendant within the extended period. Accordingly, this court dismissed all claims against "Officer Bishop" on September 19, 2018.[13]

The court granted the motions to dismiss filed by the City of Sheffield, Alabama, the Sheffield Police Department, Sheffield Shift Commander Ricky Terry, and Sheffield police officer Sam Garrison on October 9, 2018, and directed plaintiff

---

[10] *See* doc. no. 39.

[11] *See* doc. no. 42.

[12] *See* doc. no. 44. Defendant Cedric Morris filed a motion for summary judgment prior to the deadline for service, and the court denied that motion as moot. *Id.*

[13] *See* doc. no. 47.

4

to file an amended complaint.[14] The court denied the remaining motions — *i.e.,* those filed by the City of Muscle Shoals, Alabama, Muscle Shoals Police Chief Clint Reck, and Muscle Shoals Police Officer Steven Benson without prejudice to renew the motions following the filing of plaintiff's amended complaint.[15]

Plaintiff filed an amended complaint on October 19, 2018, asserting claims under 42 U.S.C. § 1983 for violation of her Fourth Amendment rights and state law claims of battery *only* against Muscle Shoals Police Officer Steven Benson and Sheffield Police Officer Sam Garrison.[16]

Benson filed the motion for summary judgment presently before the court on November 2, 2018.[17]

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the

---

[14] *See* doc. no. 49.
[15] *Id.*
[16] *See* doc. no. 50 ("[Amended] Complaint") (alteration supplied).
[17] *See* doc. no. 52.

5

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). Inferences in favor of the non-moving party are not unqualified, however. "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983) (alteration supplied). Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis and alteration supplied). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). The court's role in deciding a summary judgment motion is not to

6

evaluate the truth of the matter, but instead to determine whether there is a genuine issue of material fact. *Id.* at 249-50.

## III. FACTUAL BACKGROUND

Discovery has not been conducted in this case, so the facts are limited to those that can be gleaned from plaintiff's declaration and defendant Benson's affidavit and supporting documentation: *i.e.,* the affidavit of Muscle Shoals Police Lieutenant Robert Newton, and records relating to the Taser assigned to Benson by the Muscle Shoals Police Department.

Plaintiff's declaration states that, on the night of April 18, 2016, she heard the sounds of her "door being knocked in" and of someone falling.[18] She states that Officers Benson and Garrison had entered her home "by knocking the front door down."[19] Garrison directed her to go with him and Benson.[20] When plaintiff asked for an explanation, the officers said there was a warrant for her arrest, but did not show her a copy.[21] Garrison eventually admitted that they did not have a warrant, but contended that an arrest warrant had been issued by an official in neighboring

---

[18] Doc. no. 57-1 (Exhibit A to "Plaintiff's Response in Opposition to Defendant Steve Benson's Motion for Summary Judgment"), at ¶¶ 2-3.
[19] *Id.* at ¶ 4.
[20] *Id.* at ¶ 5.
[21] *Id.* at ¶¶ 6-8.

7

Limestone County, Alabama.[22] Plaintiff continued to ask to see the warrant, which resulted in Benson suggesting that she was resisting arrest.[23] Plaintiff insisted that she was not resisting arrest, but wanted to see the warrant.[24] Benson then stated that plaintiff was resisting arrest and Tasered her three times.[25] One of the prongs of the Taser entered her side, and two prongs entered her breast.[26] Benson and Garrison grabbed her by her arms and legs and dragged her from her home.[27] Benson and Garrison kicked her in her side while she was handcuffed.[28] Plaintiff's husband asked the officers to stop kicking plaintiff.[29]

Plaintiff was not subsequently charged with resisting arrest.[30]

At some unspecified time, plaintiff was taken to Helen Keller Hospital for treatment of the laser prongs that had lodged in her breast.[31] The prongs could not be completely removed, and plaintiff has suffered complications, including a false

---

[22] *Id.* at ¶¶ 9-10.

[23] *Id.* at ¶¶ 11-12.

[24] Doc. no. 57-1 (Exhibit A to "Plaintiff's Response in Opposition to Defendant Steve Benson's Motion for Summary Judgment"), at ¶ 13.

[25] *Id.* at ¶¶ 15-16.

[26] *Id.* at ¶¶ 17-18.

[27] *Id.* at ¶¶ 19-20.

[28] *Id.* at ¶ 21.

[29] *Id.* at ¶ 22.

[30] Doc. no. 57-1 (Exhibit A to "Plaintiff's Response in Opposition to Defendant Steve Benson's Motion for Summary Judgment"), at ¶ 23.

[31] *Id.* at ¶ 24.

8

diagnosis of breast cancer.[32]

Plaintiff avers that she had no opportunity to observe the serial number on the Taser deployed by Benson.[33] She states that she is not familiar with the policies of the Muscle Shoals Police Department regarding the assignment of Tasers to its officers, or "any policy restricting the sharing of Tasers among its police officers or otherwise," and that she has had no opportunity to "know or find out whether MSPD [*i.e.*, Muscle Shoals Police Department] officers always comply with any such policy restricting the sharing of Tasers among its police officers."[34]

Muscle Shoals police officer Steven Benson states that he began his shift at 6:00 p.m. on Monday, April 18, 2016.[35] His assigned patrol car had mechanical issues, however, so he drove a different vehicle on that date.[36] The Taser issued to him, bearing serial number X290025AR, remained in his assigned, but undriveable patrol car.[37] He contends, therefore, that he was not "carrying [his] assigned Taser on [his] person, and was not otherwise equipped with a Taser, when [he] encountered

---

[32] *Id.* at ¶¶ 25-27.

[33] *Id.* at ¶ 31.

[34] Doc. no. 57-1 (Exhibit A to "Plaintiff's Response in Opposition to Defendant Steve Benson's Motion for Summary Judgment"), at ¶¶ 28-30.

[35] Doc. no. 54-1 (Exhibit A to "Evidentiary Submission in Support of Motion for Summary Judgment by Defendant Officer Steve Benson") at ¶ 5.

[36] *Id.*

[37] *Id.* at ¶ 7.

Ms. Jarmon-Goodman, on April 18, 2016."[38] Benson declares that he only assisted officers from the Sheffield Police Department in the arrest of plaintiff at her residence between 9:00 and 10:00 p.m. on April 18, 2016.[39]

Benson states that, when he first encountered plaintiff, she was in bed.[40] Officers got her out of bed, and she walked down the hall of her residence.[41] She was escorted outside by an unnamed officer or officers.[42] Benson spoke to a man who identified himself as plaintiff's husband, and asked Benson how he could obtain plaintiff's release.[43] Benson states that he did not personally participate in escorting plaintiff out of the residence, did not place her in a patrol car, and did not deploy a Taser.[44]

Benson also submitted records relating to the Taser assigned to him, and the affidavit of Muscle Shoals Police Lieutenant Robert Newton.[45] Benson contends that those records show that the Taser assigned to him was not discharged or otherwise

---

[38] *Id.* at ¶ 8.

[39] *Id.* at ¶ 4.

[40] Doc. no. 54-1 (Exhibit A to "Evidentiary Submission in Support of Motion for Summary Judgment by Defendant Officer Steve Benson") at ¶ 10.

[41] *Id.* at ¶ 11.

[42] *Id.* at ¶ 12.

[43] *Id.*

[44] *Id.* at ¶¶ 9, 13.

[45] *See* doc. no. 54-2 ("Evidentiary Submission in Support of Motion for Summary Judgment by Defendant Officer Steve Benson") ex. B & Tab 1.

activated on April 18, 2016. Lieutenant Newton verified the "Muscle Shoals Police Department Equipment Issued Form" showing that a Taser model X2 bearing serial number X290025AR was issued to Benson on March 18, 2015.[46] He stated that the Taser was "brand-new" when issued to Benson, and that Benson had not been issued another Taser since that date.[47] He further stated that Muscle Shoals Police Department policy prohibits an officer from using a Taser that is not assigned to him or her.[48]

Lieutenant Newton explained the significance of the data displayed in the report submitted as an exhibit to his affidavit as follows:

10. The report on pages two through thirteen of Tab 1 shows the activity of the Taser with serial number X290025AR from May 13, 2014, when the device was first manufactured, to October 19, 2018, when I generated the report.

11. To generate the Taser activity report for the Taser with serial number X290025AR, I plugged a cable into the bottom of that particular device.

12. The other end of the cable contains a USB plug, which I plugged into a USB port on a departmental computer at MSPD.

13. The data from the device is then uploaded to the computer using the software from TASER International, Inc., the Taser's

---

[46] Doc. no. 54-2 (Exhibit B to "Evidentiary Submission in Support of Motion for Summary Judgment by Defendant Officer Steve Benson"), at ¶¶ 4 & 6.

[47] *Id.* at ¶ 6-7.

[48] *Id.* at ¶ 8. Defendant did not provide a copy of the Taser usage policy to the court.

manufacturer.

14. A report showing this data may then be generated and printed.

15. The report shows each event that the particular Taser experiences in the column titled "Event."

16. For example, the term "Armed" means that the Taser was turned on, and was ready for use.

17. The term "Trigger" means that the trigger on the device was pulled or squeezed, deploying one of the two available cartridges containing a probe.

18. The term "Safe" means that the Taser was turned off.

19. The term "Arc" means that the Arc switch was used to employ a warning arc display.

20. An "Arc" event can also indicate that the device was used in drive-stun mode, meaning that energy flowed across the Taser's electrodes and was delivered into an individual when the Taser was in direct contact with that individual without deploying the probes.

21. The report on pages two through thirteen of Tab 1 shows the complete and entire log of activity for the Taser with serial number X290025AR, as the data from this device has not been altered in any way.

22. I understand that Cheryl Jarmon-Goodman has filed a lawsuit against Officer Benson alleging that she was tased by him on April 18, 2016.

23. For the year 2016, the report in Tab 1 only shows activity by the Taser with serial number X290025AR on January 4, 2016; March 6, 2016; and June 26, 2016.

24. On each of these dates, the event shown is either "Safe" or "Armed." There are no events of "Arc" or "Trigger," meaning this particular device was not deployed at all in 2016.

25. The report for the Taser with serial number X290025AR, which was issued to Officer Benson during that time period, does not show any event or activity on April 18, 2016.

26. Since there is no event on April 18, 2016, for the Taser with serial number X290025AR, that device was not powered on on [*sic*] that date.

27. Had any activity occurred involving the Taser with serial number X290025AR, including had the Taser been deployed on an individual on that date, it would be shown on this log as "Trigger" if the probes were deployed, or "Arc" if used in drive-stun mode[49] directly in contact with an individual.

28. Since there is no data showing either a "Trigger" or "Arc" event for the Taser with serial number X290025AR on April 18, 2016, that Taser was not deployed on that date.

Doc. no. 54-2 (Exhibit B to "Evidentiary Submission in Support of Motion for Summary Judgment by Defendant Officer Steve Benson") (alteration supplied).

## IV. DISCUSSION

The first claim asserted against defendant Benson in plaintiff's amended complaint is based upon 42 U.S.C. § 1983, a statute that authorizes civil suits against state, county, or municipal governmental entities or officials to recover damages for

---

[49] "Drive Stun" mode is described as follows: "where the Taser is held against the target without firing the projectiles, and is intended to cause pain without incapacitating the target." www.wikipedia.org/wiki/Taser (last visited Jan. 17, 2019).

conduct under color of state law that allegedly deprived the plaintiff of rights, privileges, or immunities secured by the United States Constitution or federal law.[50] In particular, plaintiff alleges that Benson violated her rights under the Fourth Amendment when he deployed a Taser and dragged her from her residence.

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 394-95 (1989)). "Whether a specific use of force is excessive turns on factors such as the severity of the crime, whether the suspect poses an immediate threat, and whether the suspect is resisting or fleeing." *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1559 (11th Cir. 1993) (citing *Graham*, 490 U.S. at

---

[50] Specifically, the statute provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. The Supreme Court held, in *Mitchum v. Foster*, 407 U.S. 225, 238-39 (1972), that the statute was enacted for the express purpose of enforcing the Fourteenth Amendment. *See also*, *e.g.*, *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 834 (1985); *Monroe v. Pape*, 365 U.S. 167, 171 (1961).

394).

Defendant contends that his motion for summary judgment should be granted because he did not have possession of his assigned Taser, did not deploy a Taser against plaintiff, and the data from his assigned Taser shows that it was not deployed on April 18, 2016. He also asserts that he did not "escort" plaintiff from her residence that night, and that even if he had done so, his actions were a *de minimis* use of force. *See, e.g., Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003) (stating that Circuit precedent establishes that "some use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense"); *see also Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000) ("the application of *de minimis* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment").

In summary, plaintiff's sworn testimony asserts that defendant Tasered her on April 18, 2016, and "dragged" her from her residence in violation of her Fourth Amendment right to be free from the use of excessive force, whereas defendant swears that he did not have his assigned Taser in his possession, did not deploy a Taser on that date, and did not participate in removing plaintiff from her home. That conflict in testimony alone constitutes a dispute of material fact that is within the province of the jury to resolve, and requires the denial of summary judgment.

Defendant asserts, nevertheless, that the data obtained from the Taser assigned to him conclusively proves that he did not Taser plaintiff. Plaintiff notes that, due to the procedural posture of the case, she has not had the opportunity to cross-examine the witness who provided the data report, or otherwise test the reliability of the data obtained from defendant's assigned Taser.

Further, plaintiff argues that she has not had the opportunity to review any policies relating to the use of Tasers by officers employed by the Muscle Shoals Police Department. Defendant has not provided any policies to the court. As plaintiff aptly observes, the existence of a policy prohibiting the "sharing" of Tasers does not mean that all officers adhere to the policy, or that any such policy was complied with in this instance.

Accordingly, the court finds that there are genuine issues of material fact that preclude summary judgment on plaintiff's 42 U.S.C. § 1983 claim.

As for plaintiff's state law claim of battery, the same reasoning applies. To prevail on a claim of battery under Alabama law, a plaintiff must show that the defendant intentionally touched her in a harmful or offensive manner. *Ex parte Atmore Community Hospital*, 719 So. 2d 1190, 1193 (Ala. 1998). As stated above, plaintiff swears that defendant Tasered her and dragged her from her home, while defendant swears that he did not. Accordingly, these facts are due to be resolved by

a jury, and summary judgment on that claim also is due to be denied.

For the foregoing reasons, defendant Steve Benson's motion for summary judgment will be denied by a separate order entered contemporaneously herewith.

**DONE** this 30th day of January, 2019.

_____
United States District Judge