FILED

2019 Oct-11  PM 12:05
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHWEST DIVISION

|  |  |  |
|---|---|---|
|  | } |  |
| **CHERYL JARMON-GOODMAN** | } |  |
| Plaintiff. | } |  |
|  | } |  |
| v | } | **Case No.:  3:18-cv-591-CLS** |
|  | } |  |
| **SAM GARRISON, et.al.** | } |  |
| Defendants. |  |  |

## RESPONSE TO PLAINTIFF'S AFFIDAVIT/ ORDER TO SHOW CAUSE

COMES NOW, the undersigned attorney Terrell McCants and responds to Plaintiff's Affidavit[1] and pray that the Court grant his motion to withdraw and levy no sanctions against him, and in support of the relief requested, the attorney shows as follows:

## I.    Facts

My firm began representation of Cheryl Jarmon-Goodman in or about June 2018 after the case had been referred by another firm in Birmingham.  Her case is a

---

[1] Doc. No. 71

case of alleged civil rights violations, namely excessive force by 2 police officers, Officer Garrison and Officer Benson.  She claimed that Benson had tasered her multiple times and that Garrison had dragged her and kicked her multiple times when they came in to arrest her for allegedly making death threats to a co-worker. When we received the case, it was pending summary judgment in this Court.  We awaited an opinion.  The opinion subsequently issued, and the order stated, generally that the complaint had been a "shotgun pleading" and the Court gave an opportunity to amend the complaint.  I had Mrs. Goodman come into the office to go over the opinion and amend the complaint.  I amended the complaint, which was the first complaint I had written in the case, as to make it impervious to attack at the "motion to dismiss" stage which is to say it was specific and far from a shotgun pleading.  Mrs. Goodman helped me with the facts and the identities of the officers since I was not at the scene and would have no way of knowing either. She told me that she knew the officers from seeing them in other places and had independent knowledge of their identities as she had met them in other places. And she was so specific as to the places she had seen the officers and how she had made their acquaintance that there could have been no way for me to know these things or **"have her to lie"** even if I had not been morally and ethically prohibited from doing so which I was. She also testified to this in her deposition[2].  She was, in fact, adamant that she knew their identities even in the face of evidence to the contrary.  She told me that she had known Officer Garrison prior to the night in question because she had met him through an uncle she had which had worked at the Sheffield Police Department with Garrison.  I did not know Mrs. Goodman prior to my involvement with this case and certainly did not know any of her

---

[2] Doc. No. 74-1 at 96:3-23

extended family.  This again presents a problem for her allegation that I "had her to lie".

Officer Benson later testified when I took his deposition that he had not been the officer that tasered Mrs. Goodman, but an Officer Bissonnette had actually done so and produced documentary evidence that he had not discharged his taser on the night in question. Officer Garrison also testified that he had not even been at work on the night in question, much less at Mrs. Goodman's home.

After hearing the testimony, I advised Mrs. Goodman, that in my professional opinion, an attempt at a negotiated settlement would be prudent as a jury would likely believe the testimony of the officers combined with the documentary evidence. Mrs. Goodman later informed me that she could not identify the officers from the night in question but had relied on her original attorney's identification of the officers.  I then asked if it was possible then that Garrison was not even at her house and she replied that it was possible. She then told me that she had no choice but to testify the way she did because Garrison and Benson were the only officers remaining in the case.  I told her that she had/has the choice to tell the truth.  She then said that since I had told her to be sure of her identification of the officers, I had forced to testify the way she did. My advice to her was based on the things she had already told me she knew about the named officers.  After the client interview, amending the complaint, depositions, interrogatory and requests for production responses, almost a year and a half later she then told me that she did have video evidence from the night in question which she had allegedly not known was available this entire time that confirmed that  she was correct in her identification of the officers.  She refused to allow me access to these alleged videos.  I told her that I could not go forward with her representation and possibly suborn perjury.  To date, I am unsure of the veracity of her testimony

as there have been several inconsistencies and changes in the story. She then sent a text to our office on August 28, 2019 stating "please work on changing my deposition…"[3]  I informed her that substantive testimony in a deposition cannot be changed and that I could not do so.  I then received text messages from Mrs. Goodman (and strange texts from someone purporting to be Mrs. Goodman's sister) stating that she wanted me to "start her case over" or she would go with two other attorneys which had been hired by her sister and brother.  However, Mrs. Goodman sent a message saying that if I was not willing to start her case over, she was going to go with the two new attorneys her family had hired[4].  To this message I replied that I was not able to "start her case over" and that if she had attorneys that could, I understood her desire to have them represent her[5].  I further asked that she "please send me a message terminating my representation" and I would withdraw and wished her the best of luck with her case going forward.[6]  Then, on September 1, 2019, I received an email letter terminating representation.

## II.   Mrs. Goodman's decision to terminate representation was not about any issue with her bankruptcy

First, Mrs. Goodman's letter states that she terminated representation on September 2, 2019.  The actual termination date was September 1, 2019[7].  Second, I am not Mrs. Goodman's bankruptcy attorney and we have never had a conversation about her bankruptcy case.  That said, I was more than happy to appear on September 5, 2019 to give a status to the Court and make the motion to employ special counsel in open court as I repeatedly informed the Court and Mrs.

---

[3] Exhibit 2
[4] Ex. 3
[5] Ex. 4
[6] *Id.*
[7] Exhibit 1 Termination Letter.

Goodman's bankruptcy attorneys that I did not have and could not get electronic access to the bankruptcy court. However, I was terminated before that court date by Mrs. Goodman.

Mrs. Goodman did not communicate to me at any time that she was terminating representation due to any issues in bankruptcy court. Her actual termination letter never mentions it. She has also sent several text messages about representation shortly before she sent her termination letter in which she voiced displeasure, but never once mentioned any alleged issues with her bankruptcy. She did mention several other things.

### III.   The reason for the termination/affidavit is that we disagreed as to how the case should proceed.

Mrs. Goodman had never voiced any problems she had with my representation until I advised her that her testimony would not be believed by a jury and subsequently found out that she may not have been truthful about the officer identifications she made. I spoke with Mrs. Goodman and informed her of the happenings in her case promptly. Even when I had short notice of the deposition of Officer Bissionnette, the officer that every officer involved says actually tasered Mrs. Goodman, I called and asked her to come if she could. I also never told her that anyone which she alleged had actually participated in the use of excessive force except an Officer Bishop for service reasons had been dismissed in summary judgment because no one else was dismissed. The Court actually denied the summary judgment motion filed by Officer Benson[8] after I filed a response in opposition to the motion based on the fact that there were disputed facts as to who actually tasered Mrs. Goodman. I have made several trips to Huntsville and one to

---

[8] Doc. No. 70

Tuscumbia from Birmingham concerning this case and have kept Mrs. Goodman informed every step of the way.  The reasons for termination of representation were not communication or bankruptcy issues, but were the facts that I could not start her case over[9] or "change her deposition"[10]


## IV.    <u>Conclusion</u>

The allegations made against me in Plaintiff's affidavit are patently false. She has admitted to lying under oath and apparently has no qualms about lying under oath or otherwise.  It has come to my attention that Mrs. Goodman has informed the Bankruptcy Court that she is no longer pursuing this litigation[11], but she has not dismissed this case which is in itself a misrepresentation to the Court. I am unaware as to whether she attributes this falsehood to my coercion or not.  But, if she does at some point in the future, I can also assure the Court that I had no part in that one either. Furthermore, her numerous bankruptcy filings indicate a penchant to make promises or contracts and then seek means to avoid responsibility for her actions by any means necessary as she has done in this situation. After potentially perjuring herself, rather than take responsibility for her actions, she seeks to shirk any responsibility and blame her attorney which had no knowledge of it whatsoever.  In the undersigned's humble opinion, the Court's denial of attorney withdrawal or levying of sanctions will teach the Plaintiff that deceit and manipulation are acceptable behaviors by parties in litigation.  I have done nothing but do the best job I could for Mrs. Goodman and give her the best advice I could with the

---

[9] Ex. 3
[10] Ex. 2 "Please work on changing my deposition."
[11] Doc. No. 74-19. Plaintiff's Affidavit to the Bankruptcy Court

information I had.  I am requesting that the Court allow my withdrawal from the case without sanctions levied.

WHEREFORE, premises considered, the undersigned prays that this Court enter its order allowing withdrawal herein without sanctions levied. On this, the 11th day of October, 2019.

Respectfully submitted,

/s/ Terrell E. McCants\_\_\_\_\_

Terrell E. McCants (MCC176)

Burrell & McCants, LLC.

712 32nd St. South

Birmingham, Alabama 35233

205.202.5599 (Telephone)

205.918.8041 (Facsimile)

CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2019, a copy of the same has been served by email or efile to counsel of record and if by fax efile, with the Clerk of the Court using the CM/ECF system .

/s/ Terrell E. McCants

Terrell E. McCants