FILED

2019 Oct-30  PM 12:35
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWEST DIVISION

| | |
|---|---|
| **CHERYL JARMON-GOODMAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CASE NO. 3:18-cv-00591-CLS** |
| ) | |
| **SAM GARRISON,** ) | |
| **STEVE BENSON** ) | |
| ) | |
| **Defendants.** ) | |

## DEFENDANTS' JOINT MOTION FOR SANCTIONS,
## INCLUDING ATTORNEYS' FEES AND COSTS
## AND DISMISSAL OF ALL CLAIMS WITH PREJUDICE

Defendants Sam Garrison and Steve Benson respectfully move this Court, pursuant to its inherent powers, for sanctions against Plaintiff Cheryl Jarmon-Goodman, including (1) dismissal of all claims with prejudice; (2) attorneys' fees and costs relating to Defendants' investigation of an email sent on August 28, 2019; and (3) attorneys' fees and costs pertaining to Defendants' defense against this lawsuit in its entirety. In support of their motion, Defendants state as follows:

## I.    Factual Background

1.    The Court is already well aware of both the factual and procedural background of this case. For present purposes, it is enough to reiterate Defendants' position that Plaintiff has lied about the identities of the police officers who allegedly

used force on her in the course of her arrest on April 18, 2016. Specifically, Plaintiff has falsely accused Officer Benson of using a Taser on her when he did not do so, and she has falsely accused Sgt. Garrison of using force on her when *he was not even present for her arrest*.[1] Although Plaintiff has admitted to her perjury on at least one of these points (see Doc. 71 at 2), it appears that she is continuing in her efforts to corrupt the evidentiary record.

2.     On August 28, 2019 at 2:51 P.M. CDT, undersigned attorney Allison B. Chandler, counsel for Officer Benson, received a cryptic email message purportedly from a "Vanessa Brown Jarmon" at the email address bvanessa360@yahoo.com. (See **Ex. 1**, Affidavit of Allison B. Chander). The full message reads as follows:

> I have some information that might help in your case with Steve Benson, Police Officer for Muscle shoals,defendant plaintiff Cheryl Goodman. I know you can't discuss the actual case with me and I am not asking you to do that but **I do have information that can help your case**. If you are willing to talk to me about it you can email me back with a yes or no I will email you back and provide  my cell phone as to where I can be reached. **This information will not be free** it 100% factual information of the events that happened on April 18, 2016 up until now. I am sure you would like to hear what I have to tell you. I know there is another another involved in the case as well against Sam Garrison if you could reach out to him and let him know that **I have information that will help also I am willing to testify to this. But it will not be free** this is 100% factual information.

---

[1] Defendants hereby incorporate by reference the factual allegations outlined in their briefs in support of their motions for summary judgment. (See Doc. 73 ¶¶ 1-66); (Doc. 77 ¶¶ 1-29).

(Email, Exh. A to Chandler Aff.) (all errors in the original) (emphasis supplied).

3.      Counsel for Officer Benson immediately became concerned that this email message constituted unlawful activity, potentially in violation of federal and/or state criminal laws.[2] Accordingly, counsel for Officer Benson quickly contacted law enforcement after receiving this email. Counsel for Officer Benson also shared the email with counsel for Sgt. Garrison.

4.      Defense counsel never responded to the email from "Vanessa Brown Jarmon" and never sent any messages to bvanessa360@yahoo.com.

5.      Instead, after locating contact information for a Vanessa Jarmon Brown living in North Alabama, defense counsel issued a subpoena compelling Ms. Brown to give deposition testimony in this case. (See **Ex. 2**). Copies of the notice and subpoena were sent to all attorneys of record, including Plaintiff's counsel.

6.      Vanessa Fay Jarmon Brown appeared for her deposition on September 10, 2019. (See **Ex. 3**, Deposition of Vanessa Brown). Ms. Brown was accompanied at the deposition by her daughter. Although notice of the deposition was sent to all counsel of record, neither Plaintiff nor her attorney appeared for the deposition.

---

[2] For example, federal law prohibits any person from demanding anything of value "because of the testimony under oath . . . to be given by such person as a witness upon any such trial, hearing, or proceeding." See 18 U.S.C. § 201(c)(3). Further, state law prohibits a witness in any proceeding from soliciting a thing of value on the understanding that her testimony "will thereby be corruptly influenced." See Ala. Code § 13A-10-122(a)(1).

7.     Ms. Brown testified that she is the stepsister of Plaintiff Cheryl Jarmon-Goodman. (Brown Depo. 7:7-8:21). However, Ms. Brown also testified that she had not heard about this case before receiving notice of her deposition, and she stated that she had no knowledge concerning the events underlying this lawsuit. (Id. 20:20-21:15).

8.     Defense counsel showed Ms. Brown a copy of the email purportedly sent to Ms. Chandler by "Vanessa Brown Jarmon." (Brown Depo. 21:16-22:12). Ms. Brown, expressing surprise, denied sending the email and denied any knowledge of it whatsoever. (Id. 22:13-23:8). Ms. Brown also testified that the address bvanessa360@yahoo.com did not belong to her and that she had never used or even seen that email address before. (Id. 15:6-16, 22:15-22, 23:13-15, 28:1-17).

9.     Ms. Brown testified that she did not know who might have sent the August 28, 2019, email purportedly from "Vanessa Brown Jarmon." (Brown Depo. 23:16-18). However, Ms. Brown did express her belief that Plaintiff and her siblings may have engaged in fraudulent conduct and/or identity theft in the past. (Brown Depo. 24:6-27:9).

10.     In light of Ms. Brown's testimony, defense counsel issued a subpoena to Oath Holdings, Inc., owner of the Yahoo email service, seeking information on the person who created and used the bvanessa360@yahoo.com address. (See **Ex. 4**).

4

11.     The documents provided by Oath Holdings in response to that subpoena indicate that the bvanessa360@yahoo.com account was created on the afternoon of August 28, 2019, just fifteen minutes before the email to Ms. Chandler was sent from that address. (See **Ex. 5** at 4) (created at 19:36 GMT, or 2:36 P.M. CDT).

12.     The Oath Holdings documents also show that the user who created that email address provided, among other things, a **"verified"** mobile phone number. (See Ex. 5 at 4). The fact that this phone number was "verified" shows that it was actually in the user's possession or control at the time that s/he created the account.[3]

13.     On August 27, 2019—one day before the Yahoo account was created—Plaintiff's son Jordan Goodman recited *the exact same phone number* as belonging to **Plaintiff's husband**, Frank Goodman. (See **Ex. 6**, excerpts from deposition of Jordan Goodman, at 77:20-78:7); (cf. Ex. 5) (same phone number).

14.     It is therefore clear that Frank Goodman, *or someone with access to his cell phone*, created the email address bvanessa360@yahoo.com, and then sent the email message in question to defense counsel.

---

[3] When a user signs up for a new Yahoo email address, the company sends a verification code by automated text message or phone call to the user's phone number. The user then proves that s/he has access to that phone number by submitting the verification code through Yahoo's website. **A user cannot finish signing up for a Yahoo email address without verifying his or her phone number in this manner.** The Court can confirm this process by visiting the Yahoo account creation page at https://login.yahoo.com/account/create and filling out enough information (genuine or otherwise) to proceed to the next screen.

15.     It is unlikely that Frank Goodman was himself responsible for the email message, as he testified that he does not use email at all. (See **Ex. 7**, excerpts from deposition of Frank Goodman, at 14:10-17). He has also testified that he does not use text messaging (see id.), which is Yahoo's default method for verifying the phone number associated with an email account. By contrast, Plaintiff is comfortable using email and text messaging. (See **Ex. 8**, excerpts from Plaintiff's deposition, at 11:2-6, 163:24-164:5); (see also Doc. 81 Exs. 2-3) (emails and text messages from Plaintiff to her attorney).

16.     Moreover, Plaintiff did not sit in on Jordan's August 27, 2019 deposition. Thus, Plaintiff did not hear Jordan's testimony revealing her husband's phone number before the bvanessa360@yahoo.com account was created using that same number the very next day.

17.     Plaintiff was engaged in other efforts to corrupt the evidentiary record *on the same day that the email was sent*. Specifically, Plaintiff's attorney has submitted evidence showing that on August 28, 2019, *less than two hours before the fraudulent email was sent*, Plaintiff asked her attorney to substantively alter her deposition testimony. (See Doc. 81 at 4); (Doc. 81 Ex. 2).

18.     Plaintiff was *not* seeking to correct inaccurate testimony. (See Doc. 81 Ex. 2). Instead, Plaintiff expressed a belief that if her substantive testimony was

changed and the case was subsequently "done right," she might recover $150,000 from Defendants (see id.)—*even though Plaintiff had already admitted that the Defendants might not have been involved in her arrest at all*. (See Doc. 81 at 3) (noting that Plaintiff "could not identify the officers from the night in question" and admitted that "it was possible then that Garrison was not even at her house").

19.    It is also telling that around this same time, just after Plaintiff's attorney warned her that he could not change her deposition testimony, Plaintiff's attorney started receiving "strange texts from someone purporting to be [Plaintiff's] sister[] stating that she wanted [him] to 'start her case over.'" (Doc. 81 at 4).

20.    The fraudulent email sent by someone with access to Plaintiff's husband's cell phone must also be seen in the context of Plaintiff's *admitted* perjury in this case. (See Doc. 71 at 2) (Plaintiff's admission that she **"lie[d] under oath"** about the identities of the officers involved in her arrest).

21.    To be clear, Plaintiff's perjury was already evident from the face of her testimony. (See, e.g., Doc. 73 ¶¶ 50-59); (Doc. 77 ¶¶ 30-33) (highlighting just some of the blatant inconsistencies and shifting excuses in Plaintiff's testimony). Just by way of example, Plaintiff invented impossible encounters with a long-dead individual (see Doc. 73 ¶¶ 54-56), claimed that she knew Sgt. Garrison from encounters that pre-dated his time as a local police officer (see id. ¶¶ 57-59), and denied the involvement

of an officer who *admits* that he used force on her on the evening in question (see id.

¶¶ 60-62). Thus, Plaintiff's open concession that she "lie[d] under oath" merely

confirms what is already obvious from the record itself. (See Doc. 71 at 2).

22.     Although Plaintiff has attempted blame her attorney, Terrell McCants,

for her "lie[s] under oath" (see Doc. 71 at 2), the undersigned attorneys (including

those who were present for Plaintiff's deposition) have seen no indication whatsoever

that Mr. McCants knowingly suborned or encouraged her perjury. Rather, Plaintiff's

testimony and subsequent tactics are consistent with her *own* "penchant . . . to avoid

responsibility for her actions by any means necessary." (Doc. 81 at 6).[4]

23.     Moreover, Plaintiff has already attempted to perpetrate *another* fraud on

the court overseeing her ongoing bankruptcy proceeding. Specifically, Plaintiff

recently stated *under oath* in that proceeding that she was "no longer pursuing" this

lawsuit. (See, e.g., Doc. 73 ¶¶ 67-74); (Doc. 77 ¶¶ 34-38).

24.     In summary, (1) Plaintiff has lied under oath about material facts in this

case (and has admitted to doing so); (2) Plaintiff has falsely represented the status of

this case under oath in another proceeding; (3) Plaintiff has attempted to substantively

---

[4] Indeed, this is not the first time that Plaintiff has blamed an attorney for her own apparent perjury. Plaintiff suggested in her deposition that she lied under oath when pleading guilty to past criminal charges of assault and resisting arrest, but claimed that she did so only "because I was doing what my attorney told me to do." (Plaintiff's Depo. 141:11-142:9).

alter her previous testimony in order to keep her false claims against Defendants alive, even while acknowledging that Defendants are not actually responsible for her alleged injuries; (4) the bvanessa360@yahoo.com email account was created *on the same day that Plaintiff attempted to have her deposition testimony changed*; (5) that account was created using Plaintiff's husband's cell phone number; (6) Plaintiff's husband does not use email; (7) because she was not present for Jordan's deposition, Plaintiff likely did not know that her husband's cell phone number was already in the evidentiary record; and (8) Plaintiff's stepsister did not create the email account, and she stated that Plaintiff had engaged in similar conduct in the past.

25.    The foregoing facts constitute clear and convincing evidence that ***Plaintiff herself*** is responsible for sending the email from "Vanessa Brown Jarmon" to defense counsel on August 28, 2019, in an apparent attempt to corrupt the record and to induce the undersigned attorneys to engage in unethical conduct.

## II.   <u>Argument</u>

A.    Plaintiff's Egregious Misconduct Throughout This Case Requires the Imposition of Sanctions, Including Dismissal of All Claims With Prejudice

Plaintiff's most recent gambit—assuming her stepsister's identity to offer fabricated testimony for sale to defense counsel—is only the most flagrant ploy in a

case that has been entirely permeated by (and indeed *founded on*) her fraudulent conduct. These bad-faith efforts to perpetrate a fraud upon this Court not only warrant sanctions; they warrant dismissal of Plaintiff's claims with prejudice.

"Deeply rooted in the common law tradition is the power of any court to 'manage its affairs [which] necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers' and parties that appear before the court." Serra Chevrolet, Inc. v. Gen. Motors Corp., 446 F.3d 1137, 1151 (11th Cir. 2006) (quotation omitted); see also Chambers v. NASCO, Inc., 501 U.S. 32, 43-44 (1991) (citations omitted) (recognizing the inherent power of federal courts to impose sanctions and "punish for contempts"). "[A] federal court may resort to its inherent power to sanction an attorney **or a party** for bad faith conduct." Byrne v. Nezhat, 261 F.3d 1075, 1121 (11th Cir. 2001) (emphasis supplied), *abrogated on other grounds by* Bridge v. Phoenix Bond & Indemn. Co., 553 U.S. 639 (2008).

"The key to unlocking a court's inherent power is a finding of bad faith." Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1306 (11th Cir. 2009) (citing, e.g., Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998)). "A finding of bad faith is warranted where an attorney [or, as here, a party] knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying

10

or disrupting the litigation or hampering enforcement of a court order." Barnes, 158 F.3d at 1214 (quotation omitted). Under this standard, *a party herself* may be sanctioned for making false statements for a "harassing or frivolous purpose." See, e.g., Byrne, 261 F.3d at 1125; Qantum Commc'ns Corp. v. Star Broad., Inc., 473 F. Supp. 2d 1249, 269 (S.D. Fla. 2007) (noting that sanctions against a party are proper "where a party commits perjury or destroys or doctors evidence," and granting motion for sanctions on that basis).

Where, as here, a party's bad faith is egregious, dismissal with prejudice of that party's claims or defenses is proper. See, e.g., Eagle Hosp. Physicians, 561 F.3d at 1304-07 (affirming the striking of defendant's pleadings, an award of attorneys' fees, and entry of default judgment where counsel illicitly obtained privileged material and refused to reveal the source of that material). Dismissal in such cases "need not be preceded by less drastic sanctions." See Stonecreek — AAA, LLC v. Wells Fargo Bank N.A., 2014 WL 12514900, at *2 (S.D. Fla. May 13, 2014) (citing Eagle Hosp. Physicians, 561 F.3d at 1303).

In particular, the attempted fabrication of evidence is a quintessential example of egregious misconduct warranting immediate dismissal of a party's claims with prejudice. See, e.g., Gupta v. Walt Disney World Co., 482 F. App'x 458, 459 (11th Cir. 2012) (quotation omitted) ("[O]nly **the most egregious misconduct**, such as

bribery of a judge or members of a jury, or the **fabrication of evidence by a party** . . . will constitute a fraud on the court."); Stonecreek, 2014 WL 12514900, at *2-4 (citing, e.g., Gupta, 482 F. App'x at 459) (dismissing action where Plaintiff submitted forged documents in support of claims). This is because a party's fraudulent conduct in such cases implicates "the need to maintain institutional integrity and the desirability of deterring future misconduct." Stonecreek, 2014 WL 12514900, at *2 (quoting Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989)).

Plaintiff's email message to defense counsel clearly constitutes the most egregious bad faith. Plaintiff fraudulently assumed her stepsister's identity, falsely represented that her stepsister possessed information relevant to this case—and, apparently, intended to interject this false information into the evidentiary record. Had Plaintiff succeeded in her scheme, not only might a crime have been committed,[5] but the integrity of these proceedings would have been severely compromised. Therefore, Plaintiff's efforts not only had implications for the parties themselves, but also constitute a fraud that threatens the very "institutional integrity" of this Court. See, e.g., Stonecreek, 2014 WL 12514900, at *2 (quotation omitted); see also Council

---

[5] Indeed, it is likely that Plaintiff **did** commit a crime by soliciting money for testimony. See 18 U.S.C. § 201(c)(3); Ala. Code § 13A-10-122(a)(1); see also 18 U.S.C. § 1512(c)(2) (federal obstruction/tampering statute). Moreover, by assuming her stepsister's identity when creating the Yahoo email account and using it to email the undersigned, Plaintiff may be guilty of attempted (if not completed) identity theft, see Ala. Code § 13A-8-192(a)(2), or attempted (if not completed) obstruction of justice using a false identity, see Ala. Code § 13A-8-194(a).

v. Am. Fed. of Gov't Emps. (AFGE) Union, 559 F. App'x 870, 873 (11th Cir. 2014)

(quoting Travelers Indem. Co. v. Gore, 761 F.2d 1549, 1551 (11th Cir. 1985) (per

curiam)) ("Fraud on the court constitutes 'only that species of fraud which does or

attempts to, **defile the court itself**, . . . so that the judicial machinery cannot perform

in the usual manner its impartial task of adjudging cases.'") (emphasis supplied).

"It would send a dangerous message to attorneys and parties if [the Court] were

to allow a party to [attempt to] use fabricated evidence . . . and then allow the case to

proceed. Such an abuse of the judicial process, and defilement of the judicial temple

that is the court, will not be tolerated." See Stonecreek, 2014 WL 12514900, at *3.

As such, "[t]he appropriate remedy and sanction for [Plaintiff]'s fraud is **outright**

**dismissal**." See id. (emphasis supplied).

Other aspects of Plaintiff's actions drive home the presence of bad faith

warranting the appropriateness of sanctions up to and including dismissal. Even

though Plaintiff's scheme did not succeed, her fraudulent email to defense counsel

severely disrupted this litigation and substantially multiplied these proceedings by

requiring counsel to investigate both the source and the substance of her false

representations. This investigation necessarily included, among other things, (1) a

background investigation to determine the identity and contact information for

Plaintiff's stepsister, who had apparently indicated that she had relevant testimony to

offer, in order to serve a subpoena and notice of deposition; (2) the deposition itself, which established that the assertions of the August 28, 2019, email were false and fraudulent; (3) the subpoena to Oath Holdings; and (4) an in-depth review of the evidentiary record to determine the actual identity of the person responsible for that email. Plaintiff's fraudulent promises of nonexistent evidence forced Defendants to waste substantial time and money on these endeavors, thereby preventing them from otherwise devoting their resources to the defense of this case.

The extreme bad faith behind Plaintiff's fraudulent email is underscored by the fact that her promise of relevant and material evidence was accompanied by **a demand for payment** in exchange for that information. (See Ex. 1). By using a false identity to offer relevant information in exchange for payment, Plaintiff's apparent intention was to induce defense counsel to violate the Alabama Rules of Professional Conduct. See Ala. R. Prof. Conduct 3.4(b) (prohibiting attorneys from "[f]alsify[ing] evidence" or "offer[ing] an inducement to a witness that is prohibited by law"). Courts have concluded that payments to witnesses in exchange for testimony not only violate an attorney's professional obligations, but also "violate[] the integrity of the judicial system." See, e.g., Ward v. Nierlich, 2006 WL 5412626, at *3-6 (S.D. Fla. Sept. 18, 2006) (recommending disqualification and an award of attorney's fees to opposing counsel after attorney promised a witness "a stake in the litigation in return

14

for their testimony"). Accordingly, Plaintiff's efforts to induce such misconduct by defense counsel appear designed to assault this Court's integrity *twice over*—by resulting in the exchange of payment for fabricated evidence, and by resulting in the introduction of this fabricated evidence into the record.

But of course, it is not *only* the Court's integrity that is under attack. By lodging seemingly baseless allegations of misconduct against her own attorney, and by apparently spoofing text messages from "her sister" in an attempt to get him to corruptly change her testimony and "start her case over" (Doc. 81 at 4), Plaintiff has already put Mr. McCants's professional reputation in danger. Now, by sending a fraudulent email message calculated to induce defense counsel to violate their ethical and professional obligations, it appears that Plaintiff similarly intended to place the undersigned attorneys' professional reputations under threat. If Plaintiff's plan had ultimately succeeded, the prejudice that might have resulted to *every* attorney involved in this case would have been almost incalculable.

Finally, it must again be stressed that this is far from the only time that Plaintiff has sought to corrupt these proceedings. Plaintiff has already admitted that the very foundation of her claims against Defendants is premised on false testimony. (See Doc. 71 at 2). As Defendants have already pointed out in their factual arguments in support of summary judgment, which are hereby incorporated by reference (see, e.g., Doc.

73); (Doc. 77), Plaintiff lied repeatedly and in obvious ways during her deposition. When her lies were uncovered, Plaintiff sought to have her testimony changed in order to keep her claims alive. (See Doc. 81 Ex. 2). When she could not obtain that outcome, Plaintiff blamed her attorney for her own falsehoods. (See Doc. 71 at 2). And when asked by the Bankruptcy Court to simply confirm the status of this case, Plaintiff lied yet again. (See, e.g., Doc. 73 ¶¶ 67-74). Plaintiff's email scheme is not an aberration, but is simply the most egregious example of a long pattern of deceitful conduct throughout the course of this litigation. And if she is allowed to continue with her claims in light of this record, it is reasonable to assume that Plaintiff's pattern of deceit will continue.

Defendants are well aware of the gravity of these allegations, and do not make them lightly. Defendants are also aware that dismissal is a sanction of "last resort," appropriate only "when less drastic sanctions would not suffice." See, e.g., Eagle Hosp. Physicians, 561 F.3d at 1302 (quoting In re Sunshine Jr. Stores, Inc., 456 F.3d 1291, 1305 (11th Cir. 2006)). But given Plaintiff's flagrant and frequent efforts to perpetrate a fraud upon this Court, nothing less than dismissal with prejudice will suffice as an appropriate sanction for her conduct.

In addition to dismissal, Defendants respectfully request sanctions in the form of costs and attorney's fees associated in any way with the August 28, 2019, email

from "Vanessa Brown Jarmon" to defense counsel. Such sanctions should include, at minimum, reasonable fees and costs associated with (1) the deposition of Vanessa Fay Jarmon Brown; (2) defense counsel's efforts to locate Ms. Brown in order to depose her; (3) defense counsel's efforts to determine the identity of the person who created the "Vanessa Brown Jarmon" Yahoo account; and (4) the filing and prosecution of the instant motion.[6]

B.   Plaintiff's Bad-Faith Conduct and Assertion Of Frivolous Claims Should Lead Not Only To Their Dismissal, But Also to Reasonable Attorneys' Fees for the Defense of This Entire Action

Although Plaintiff's email ploy is perhaps the most dramatic example of Plaintiff's fraudulent conduct in this case, it is critical to note that *Plaintiff's entire case against Defendants* is built on false testimony. Accordingly, Defendants are entitled not only to dismissal of all claims against them as specified above, but also attorneys' fees for the entirety of their defense.

The same standards discussed above apply here: the Court, pursuant to its inherent powers, may impose sanctions for a party's bad-faith conduct, including the knowing use of frivolous arguments and the disruption of litigation. See, e.g., Barnes,

---

[6] As previously noted, Defendants have seen no indication that the fraudulent activity in this case was caused, encouraged, or knowingly suborned by Plaintiff's counsel, Terrell McCants. If anything, Mr. McCants himself appears to be a victim of Plaintiff's machinations. (See, e.g., Doc. 81). Therefore, Defendants respectfully request that this Court impose sanctions in this action on Plaintiff herself, and not on Plaintiff's counsel.

158 F.3d at 1214. Additionally, the Court's consideration may be informed by the standards governing an award of attorneys' fees to prevailing defendants, which is warranted where the Court "finds that [Plaintiff's] claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." See, e.g., Hamilton v. Sheridan Healthcorp, Inc., 700 F. App'x 883, 885 (11th Cir. 2017) (per curiam) (quoting Christianburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978)). An award of attorneys' fees is appropriate if a plaintiff's claim was "entirely without foundation," taking into account the existence *vel non* of a prima facie case, any settlement negotiations, and the procedural posture of the case upon dismissal. See id. (citations omitted).

### 1.    Sgt. Garrison

It has long been plain to all parties that Plaintiff's claims and arguments pertaining to Sgt. Garrison are frivolous, built entirely upon the false allegation that Sgt. Garrison had any involvement with Plaintiff's arrest. From his very first pleading, Sgt. Garrison has vehemently maintained that he "was not present during the encounter alleged in the complaint and did not engage in the conduct alleged." (See Doc. 55 at 15) (Sgt. Garrison's Answer). Sgt. Garrison supported this position from the outset of discovery, providing Plaintiff with (1) the names of all officers actually involved in Plaintiff's arrest and use of force; (2) shift reports showing that

Sgt. Garrison was not on duty at the time of her arrest; (3) incident reports in which each of the Sheffield Police Department ("SPD") officers *actually involved* in her arrest are specified; (4) Colbert County 911 call logs showing which SPD vehicles responded to Plaintiff's house at the time of her arrest (which, when cross-referenced to car assignments in the shift reports, established the identities of the involved officers); and (5) audio recordings of the officers involved in Plaintiff's arrest and related incidents. (See **Ex. 9**, Rule 26 Initial Disclosures of Sgt. Garrison). And with the exception of Plaintiff herself, the testimony of all witnesses in this case either has confirmed Sgt. Garrison's noninvolvement or has been consistent with it. By contrast, Plaintiff has *never* produced any affirmative evidence contrary to Sgt. Garrison's truthful insistence that he had no involvement in her arrest. In other words, *all evidence of record*—save for Plaintiff's own testimony—has long established that Sgt. Garrison not only was *not* responsible for Plaintiff's alleged injuries, but in fact had nothing to do with those injuries whatsoever.

The sole piece of evidence to the contrary has always been Plaintiff's testimony, in which she has identified Sgt. Garrison as an officer involved in her arrest. Given the absurd and easily-disproved allegations relayed by Plaintiff during her deposition, it was always evident that her identification of Sgt. Garrison was mistaken at best, and false at worst. But more importantly, Plaintiff has now

unequivocally <u>admitted</u> that this testimony was false—*and that she knew it was false at the time*. (See Doc. 71 at 2). For her part, Plaintiff asserts that her attorney "had me to lie under oath" (see <u>id.</u>); for his part, Plaintiff's attorney suggests that this assertion is premised on her deliberate misunderstanding of his insistence that she "be sure of her identification of the officers." (See Doc. 81 at 3). But regardless of *who* is responsible for Plaintiff's lies,[7] there is no dispute that Plaintiff *knew* that her testimony was false at the time that she made it, and that she perjured herself simply because she believed that she "could not go back and add [the correct] police officers to my case so I had to choose those that was remaining." (See Doc. 71 at 2). Sgt. Garrison cannot conceive of a more "frivolous, unreasonable, or groundless" case, see <u>Hamilton</u>, 700 F. App'x at 885, than one in which *all* of the evidence points to the Defendant's innocence except for the Plaintiff's own admitted perjury.

Plaintiff's claims against Sgt. Garrison have been based upon lies from the very outset. Plaintiff's attempts to persecute an innocent man—simply because she believed that relief was not available from anyone else—is the height of bad-faith litigation. Accordingly, Sgt. Garrison is entitled not just to dismissal of the claims against him, but also to reasonable attorneys' fees and costs pertaining to his full

---

[7]Again, the undersigned attorneys have seen nothing indicating that Mr. McCants knowingly encouraged or suborned Plaintiff's perjury.

defense against Plaintiff's groundless and malicious claims.

      2.   <u>Officer Benson</u>

Similarly, Officer Benson is entitled to his attorneys' fees as well for the defense of the frivolous and meritless claims against him, which were predicated on false allegations and false testimony throughout the litigation. As explained above, Plaintiff committed perjury during her deposition, as she openly admitted to lying under oath. (Doc. 71, p. 2). Yet long before that, Plaintiff's falsehoods began in the pleading stage at the very outset of the litigation. When other defendants were dismissed from the lawsuit, Plaintiff admitted that she simply picked the remaining individuals to be sued so that her case could go forward, despite knowing the truth as to who actually tased or otherwise used force against her on April 18, 2016. <u>Id.</u> ("I had to **choose those that was remaining in order to get to the next step** which was the (deposition).") (emphasis added). These sworn admissions show that Plaintiff knew from the very outset that she had no valid claims against Officer Benson, yet was needlessly pursuing her lawsuit against him.

In addition, Plaintiff was given ample information very early in the litigation to show that her claims against Officer Benson were groundless. In order to counter the false allegations in Plaintiff's pleadings, Officer Benson filed a motion for summary judgment in response to Plaintiff's amended complaint. (Docs. 52-54).

This motion and supporting evidence alerted Plaintiff that Officer Benson was *not* the individual who tased her, since he did not use a taser on April 18, 2016, the night she was tased; he was *not* armed with a taser that night, as his taser was located in his patrol car at the Muscle Shoals Police Department; and his taser was *not* deployed at all in 2016. Furthermore, Plaintiff was provided with the incident report documenting the incident when she was tased, which clearly sets out the individual who *actually* tased her (and that it was *not* Officer Benson who did so).

Yet despite being faced with this indisputable evidence showing that Officer Benson did not tase her, as well as her personal knowledge that she simply picked Officer Benson as a defendant to keep her case going, Plaintiff continued to pursue her claims against him. As a result, there can be no doubt that Plaintiff continued to litigate her claims against Officer Benson after it became clear that they were "frivolous, unreasonable, or groundless." Hamilton, 700 F. App'x at 885. Instead of dismissing Officer Benson when presented with this evidence early on, Plaintiff needlessly and vexatiously continued the lawsuit against him.

Officer Benson has been put to considerable annoyance and frustration in defending the meritless claims against him, the frivolous nature of which was apparent very early in the litigation. That Plaintiff personally knew that Officer Benson did not commit the acts she alleged, coupled with Officer Benson's early

dispositive motion attempting to point out the same, shows that Plaintiff clearly acted in bad faith in (1) initially bringing the claims against Officer Benson; and (2) continuing to pursue those claims despite being faced with contrary, irrefutable evidence. Accordingly, Officer Benson is also entitled to attorneys' fees for his entire defense against Plaintiff's baseless claims against him.

### III.    Conclusion

For the foregoing reasons, Defendants jointly and respectfully request that this Court enter an Order (1) finding, by clear and convincing evidence, that Plaintiff has engaged in egregious bad-faith misconduct amounting to a fraud upon the Court; (2) imposing sanctions on Plaintiff, including but not limited to dismissal of this action with prejudice and reasonable attorneys' fees associated with the August 28 email from "Vanessa Brown Jarmon" to defense counsel; (3) imposing further sanctions on Plaintiff in the form of reasonable attorneys' fees and costs pertaining to the entirety of Defendants' defense against Plaintiff's frivolous and baseless claims against them; and (4) other such relief as the Court deems appropriate.

s/ David J. Canupp
David J. Canupp

s/ J. Bradley Emmons
J. Bradley Emmons

LANIER FORD SHAVER & PAYNE, P.C.
P. O. Box 2087
2101 West Clinton Avenue,  Suite 102 (35805)
Huntsville, AL 35804
Phone: 256-535-1100 / Fax: 256-533-9322
E-mail:  djc@LanierFord.com & jbe@LanierFord.com

Attorneys for Defendant Sam Garrison


                                        *S/ Allen L. Anderson*
                                        Allen L. Anderson
                                        Allison B. Chandler

**F & B LAW FIRM, P.C.**
213 Greene Street
Huntsville, AL 35801
256-536-0095
Fax: 256-536-4440
Email: court@fb-pc.com

Attorneys for Defendant Steven Benson

<u>CERTIFICATE OF SERVICE</u>

   I certify that I have filed the foregoing with the Clerk of the Court using the ECF System, which will send notification of such filing to those parties of record who are registered for electronic filing, and further certify that those parties of record who are not registered for electronic filing have been served by mail by depositing a copy of the same in the United States mail, first class postage prepaid and properly addressed to them as follows:

     Terrell E. McCants
     Christopher L. Burrell
     Burrell & McCants, LLC
     712 32nd Street South
     Birmingham, AL 35233
     Phone: 205-202-5599
     Email: terrell@burrellmccants.com
     Email: chris@burrellmccants.com

     Cheryl Jarmon-Goodman
     501 ½ West Eason Avenue
     Muscle Shoals, AL 35661

on this the 30th day of October, 2019.

        <u>s/ David J. Canupp</u>
        David J. Canupp